704 So.2d 30 (1997)
Bonnie M. RAMBO
v.
Steve W. WALKER, Herman J. Walker, Sr., and Ruth Parks, Individually and in their representative capacities as co-trustees of/and the Steve E. Walker Trustee; DEF Insurance Company; the State of Louisiana through the Department of Public Safety, Office of Motor Vehicles, Driver Management Bureau; The Parish of Livingston; and International Indemnity Company.
No. 96 CA 2538.
Court of Appeal of Louisiana, First Circuit.
November 7, 1997.
*31 Jerry F. Pepper, Baton Rouge, for Plaintiff/Appellant Bonnie Rambo.
Frank Touchet, Livingston, for Defendants/Appellees Steve Walker, Herman Walker, Ruth P. Walker, The Steve W. Walker Trust.
Pamela Lebato, Baton Rouge, for Defendant/Appellee State.
Rodney Erdey, Livingston, for Defendant/Appellee Parish of Livingston.
Richard Nevils, Baton Rouge, for Defendant/Appellee International Indemnity Co.
Shannon Howard-Duhon, New Orleans, for Defendant/Appellee Trinity Universal Insurance Company.
Before CARTER and FITZSIMMONS, JJ., and TYSON[1], J. Pro Tem.
CARTER, Judge.
This is an appeal from a summary judgment rendered in favor of the Department of Public Safety and Corrections.

FACTS AND PROCEDURAL HISTORY
On August 27, 1994, Bonnie M. Rambo (Rambo), plaintiff herein, was severely injured in an automobile accident. The accident occurred when Steve W. Walker (Walker), the driver of the vehicle in which Rambo was a passenger, lost control of his car and crashed in an area some distance from the roadway. Rambo timely filed suit against Walker, Herman J. Walker, Sr., and Ruth Parks Walker, in their individual capacities and in their representative capacities of the Steve W. Walker Trust; the Steve W. Walker Trust; DEF Insurance Company; the State, through the Department of Public Safety, Office of Motor Vehicles, Driver Management Bureau (DPS); International Indemnity Company; and the Parish of Livingston.
Rambo alleged in her petition that at the time of the accident, Walker had been abusing drugs and alcohol. She claimed Walker had consistently abused drugs and alcohol for a substantial period of his adult life, but immediately prior to the accident, Walker convinced her he had been rehabilitated. Walker had been issued an unrestricted "Class E" driver's license, with an expiration date of July 31, 1995. Rambo contends that the Department of Public Safety knew or should have known of Walker's 1985 arrest in Livingston Parish for driving while intoxicated (DWI); Walker's unsuitability for driving privileges due to his extensive medical history of unsuccessful drug and alcohol rehabilitation treatments; and that DPS' failure to apply LSA-R.S. 32:403.2 to Walker would reasonably and foreseeably lead to his injuring another person in a drug/alcohol related accident.[2]
*32 Rambo alleged in the alternative that DPS had no meaningful system of detection and/or rules, regulations, medical screening or audits in place that would have prevented Steve Walker from obtaining or renewing his driver's license, given his extensive documented unsuccessful medical experience with drug and alcohol rehabilitation.
DPS answered Rambo's petition and filed a motion for summary judgment. The record reflects Rambo never filed an opposition to DPS' motion. The motion for summary judgment was granted in DPS' favor.
Rambo filed a devolutive appeal with the following specification of error:
La.R.S. 32:403.2 does in fact apply to any driver's physical or mental disability and should not be narrowly interpreted to exclude habitual drug and alcohol abusers who apply for driver's licenses.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Kidd v. Logan M. Killen, Inc., 93-1322, p. 4 (La.App. 1st Cir. 5/20/94); 640 So.2d 616, 618; Jarrell v. Carter, 632 So.2d 321, 323 (La.App. 1st Cir.1993), writ denied, 94-0700 (La.4/29/94), 637 So.2d 467; Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La. 1993); Kidd v. Logan M. Killen, Inc., 640 So.2d at 618-19.
A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989); Miramon v. Woods, 25,850, p. 10 (La.App. 2nd Cir. 6/22/94), 639 So.2d 353, 359; Kidd v. Logan M. Killen, Inc., 640 So.2d at 619; Jarrell v. Carter, 632 So.2d at 323.
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law is summary judgment warranted. Kidd v. Logan M. Killen, Inc., 640 So.2d at 619; Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear what the truth is and excludes any real doubt as to the existence of material fact. Kidd v. Logan M. Killen, Inc., 640 So.2d at 619; Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120. It is only if the court determines that the moving party has met this onerous burden that the burden of proof shifts to the opposing party to present evidence that a material fact is still at issue; only at this point may the adverse party no longer rest on the allegations contained in his or her pleadings. Robertson v. Our Lady of the Lake Medical Center, 574 So.2d at 384.
By Louisiana Acts 1996, First Extraordinary Session, No. 9, the legislature amended LSA-C.C.P. art. 966, stating in LSA-C.C.P. 966 A(2) that:
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends. (Emphasis added.)
Appellate courts are to review summary judgments de novo under the same criteria *33 that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d at 325; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir.1988).

DUTY OF DEPARTMENT OF PUBLIC SAFETY
Duty is a question of law. A duty may be imposed by legislation or by rule of law. The inquiry is whether the plaintiff has any lawstatutory, jurisprudential, or arising from general principles of faultto support [her] claim. Bozeman v. Reed, 92-0858, pp. 12-12 (La.App. 1st Cir. 3/11/94), 633 So.2d 944, 952, writ denied, 640 So.2d 1345 (La.1994).
Generally the statutory scheme for licensing drivers authorizes DPS to investigate drivers and refuse, suspend, or revoke licenses. Specifically, LSA-R.S. 32:414 provides in pertinent part:
E. The department may conduct an investigation to determine whether the license shall be suspended, cancelled, or revoked upon a showing by its records or other sufficient evidence that the licensee:
* * * * * *
(5) Is incompetent to drive a motor vehicle.
* * * * * *
(8) Is afflicted with such mental or physical infirmities or disabilities as would constitute grounds for refusal of a license. [Emphasis added.]
LSA-R.S. 32:424 provides:
The department having good cause to believe that a licensed driver or chauffeur is incompetent or otherwise not qualified to be licensed, may upon written notice of at least ten days to the licensee require him to submit to an examination. Upon conclusion of such examination the department shall take action as may be appropriate and may suspend or revoke the license of such person or permit him to retain such license, or may issue a license subject to restrictions as permitted under R.S. 32:423. Refusal or neglect of the licensee to submit to examination shall be ground for suspension or revocation of his license. [Emphasis added.]
The plain wording of these statutes indicates DPS must have some form of notice prior to investigating a licensee with regard to refusal, suspension, or revocation of his license.
A review of the jurisprudence regarding DPS' liability for licensing a handicapped driver, which results in an accident, reflects that notice of a handicap is the crucial factor. In Fowler v. Roberts, 556 So.2d 1, 8 (La. 1989), the supreme court, found DPS had violated its duty to adopt reasonable procedures designed to ensure safety on the highways. DPS was aware the applicant had a seizure disorder, which could be dangerous either at the present or in the future. This duty was found to exist not only in the initial issuance of a license, but also in the continuation of the authority to drive.
Prior to the accident in Fowler when the driver, Roberts, attempted to obtain a Louisiana driver's license, he voluntarily disclosed his seizure disorder. At the time of initial application, Roberts submitted a completed medical report form on which a doctor recited Roberts had been seizure-free for one year, was under regular medical care and was taking medication to control the disorder. Fowler v. Roberts, 556 So.2d at 3. On the basis of this medical report, DPS issued Roberts a standard driver's license, but did not instruct him to notify DPS if he had further seizures or require him to update the medical report periodically as to his current condition. Further, while Roberts' license contained an "05" restriction limiting him to driving an automatic transmission vehicle because of his partially paralyzed arm and leg, the license contained no indication of his seizure disorder which would alert future licensing officers to that condition and to his *34 need for regular medical care and medication. Thus, when Roberts' license was automatically renewed at the same DPS office with no inquiry as to recent seizures, DPS did not discover that Roberts' seizures could no longer be controlled by medication, nor did they discover he was experiencing seizures regularly. Fowler v. Roberts, 556 So.2d at 3.
In Fowler, Justice Lemmon, writing for the court, stated:
Certainly no licensing agency can be expected to monitor the physical condition of all drivers within its jurisdiction. However, while knowledge of many handicaps does not warrant subsequent monitoring, knowledge of an applicant's seizure disorder should raise a `red flag' for licensing agencies, as was admitted by DPS's field office manager. A licensing agency simply cannot be allowed, when presented with an applicant who has had seizures in the past, who is taking medication to control this condition and whose condition is likely to worsen and become dangerous, to license such an unfortuante (sic) person without restrictions and with automatic right of renewal, thereby turning him loose as a danger to the motoring public forever.
We conclude that DPS has the duty, when it knows that an applicant for a driver's license has a seizure disorder that may be dangerous either at present or in the future, to adopt reasonable procedures designed to ensure safety on the highways not only in the initial issuance of a license, but also in the continuation of the authority to drive. We further decline to adopt a categorical rule excluding DPS from liability for failure to adopt such procedures.
Fowler v. Roberts, 556 So.2d at 7-8 (footnote omitted).
In Bozeman v. Reed, 633 So.2d 944, this court considered the propriety of the issuance of a driver's license to a licensee who was physically handicapped and confined to a wheelchair (Reed). The medical report submitted by Reed at his initial application was incomplete in that it only indicated Reed was suffering from multiple sclerosis. However, it left the details regarding the severity of Reed's condition and his ability to operate a vehicle as "unknown." The court found the report which was submitted, although deficient, should have put DPS on notice that Reed's condition was one which needed to be monitored and DPS should have required further medical reports upon renewal of Reed's driver's license. Bozeman v. Reed, 633 So.2d at 951. DPS was held to have a statutory duty to obtain a detailed medical report from a driver who may have had multiple sclerosis and whose ability to operate a vehicle was unknown. Bozeman v. Reed, 633 So.2d at 953.
In White v. State, Department of Public Safety & Corrections, 93-2034, p. 19 (La.App. 1st Cir. 10/7/94), 644 So.2d 684, 695, writ denied, 94-2713 (La. 1/6/95), 648 So.2d 927, DPS was found liable for its issuance and renewal of a license without first requiring a medical evaluation, and a written and an actual driving test. These failures were found to be a cause in fact of the accident at issue. In White, the driver's physical condition (limping and obviously disabled with a contracted right arm and wrist) should have been apparent to anyone seeing him walk and move about, especially a motor vehicle officer who is trained to observe applicants for possible medical conditions which could adversely impact driving and present a danger to themselves and the motoring public.
However, in Johnson v. Department of Public Safety, 627 So.2d 732, 738 (La.App. 2nd Cir.1993), writ denied, 94-0403 (La. 4/4/94), 635 So.2d 1107, the issue presented was whether DPS had a duty, by statute or rule of law, to inquire of all renewal applicants (including those who had never had, or at least not reported, any prior handicaps or health problems) whether they had changes in their physical condition since the issuance of their last license which would make it unsafe to drive. In Johnson, although the testimony was conflicting, the trial court found the driver had never informed DPS of his seizure-prone medical condition. The court held DPS had no duty to inquire of every renewal applicant, information regarding changes in their physical condition when DPS had no notice of the licensee's prior handicap or health problems. The imposition of such a duty would expand the obvious *35 legislative intent. See, Johnson v. Department of Public Safety, 627 So.2d at 739.
In its motion for summary judgment, DPS argued it was not liable for failing to know of Walker's 1985 arrest in Livingston Parish and his alleged medical history of unsuccessful drug and alcohol rehabilitation treatments. According to the affidavit of Robert Breland, the Deputy Assistant Secretary of the Department of Public Safety and Corrections, DPS is only required to maintain a driver's record documenting criminal convictions for driving while intoxicated for ten (10) years following the date of conviction. DPS is not required to maintain information regarding a driver's criminal arrest for driving while intoxicated. Furthermore, plaintiff's counsel stipulated Walker actively concealed his chemical dependency problems from DPS, and indicated there was no allegation that Walker went to any DPS office under the influence of drugs or alcohol when applying for or renewing his license.
Under the applicable law, knowledge of Walker's alleged alcohol and/or chemical dependency is the crucial factor which would have triggered a duty on the part of DPS to take action regarding Walker's license. It is apparent from the evidence in the record that DPS had no such notice. Therefore, with respect to these allegations, there are no material facts in dispute.
DPS is not liable for its failure to apply LSA-R.S. 32:403.2 to Walker. The jurisprudence provides that liability for improperly licensing handicapped drivers only arises when DPS had notice of the licensee's "handicap" or had reasonable grounds to believe the licensee had physical or mental problems. Again, there is no dispute as to the fact that DPS had no record of a DWI conviction, and that Walker actively concealed his condition from DPS. We conclude LSA-R.S. 32:403.2 does not apply to Walker.
The final allegation against DPS was that it had no meaningful system of detection in place that would have prevented Walker from obtaining or renewing his driver's license, given his extensive documented adverse medical experience with drug and alcohol addiction. In light of the stipulation that Walker actively concealed his condition and the absence of a DWI conviction from his records, we find no duty on DPS to investigate all license applicants for non-apparent handicaps, or conditions which applicants may conceal from DPS, when DPS has no notice or information which would lead to the discovery of a defective physical or mental condition.

CONCLUSION
Based on our review of the relevant statutes and jurisprudence and under the facts presented in the case sub judice, we find as a matter of law that DPS owed no duty to take action against a driver such as Walker. It is not controverted that DPS had no knowledge of Walker's condition, nor did DPS have any notice or information which would have led to the discovery of Walker's alleged condition. The granting of the motion for summary judgment was proper.[3] Costs of the appeal are to be assessed against the appellant, Bonnie M. Rambo.
AFFIRMED.
NOTES
[1] The Honorable Ralph Tyson, Judge, Nineteenth Judicial District Court, is serving as Judge Pro Tempore by special designation of the Louisiana Supreme Court.
[2] LSA-R.S. 32:403.2 provides:

Every physically or mentally handicapped person applying for a license under the provisions of this Chapter for the first time shall attach to his application a detailed medical report, or a report from an optometrist if it is a visual defect, from a duly licensed physician indicating the severity of his disability and the limitations imposed thereby which might impair the applicant's ability to exercise ordinary and reasonable control in the operation of a motor vehicle. The department may waive the furnishing of said report by any person applying for a renewal license under the provisions of this Chapter, except for a person subject to R.S. 32:403.4.
[3] In reaching this decision, we did not consider the exhibit attached to appellant's brief. The exhibit was not introduced before the trial court during the hearing for summary judgment, thus it can not be considered on appeal. See Tranum v. Hebert, 581 So.2d 1023, 1027 (La.App. 1st Cir.), writ denied, 584 So.2d 1169 (La.1991).