724 So.2d 864 (1998)
Sonya HARRISON, Individually and on Behalf of her minor daughter Crystal Harrison, and as heir of her minor Daughter Ashley Harrison
v.
Darren K. SHIPP, Stepper Transport, Turner J. Landreneau, Elaine S. Landreneau, EBRP Sheriff's Department, and Indemnity Underwriters Insurance Company.
No. 98 CA 0021.
Court of Appeal of Louisiana, First Circuit.
December 28, 1998.
*865 Johnnie L. Matthews, Baton Rouge, for Plaintiff/Appellant, Sonja Harrison, Individually and on behalf of her minor daughter Crystal Harrison, and as heir of her minor daughter Ashley Harrison.
James R. Coxe, III, Baton Rouge, for Defendants/Appellees, Darren K. Shipp, Stepper Transport, Turner J. Landreneau, Elaine S. Landreneau, Indemnity Underwriters Insurance Company.
John W. Perry, Jr., Baton Rouge, for Defendants/Appellees, State Farm Mutual Automobile Insurance Company, Susan Clary, James Clary.
Fred Schroeder, Metairie, for Defendant/Appellee, EBRP Sheriff's Department and Sheriff Litchfield.
BEFORE SHORTESS, C.J., CARTER, and WHIPPLE, JJ.
CARTER, J.
This appeal arises out of an automobile accident in which plaintiff's three-year-old daughter was killed. Plaintiff appeals the trial court's grant of a summary judgment which dismissed the East Baton Rouge Parish Sheriff's Office from plaintiff's suit.

FACTS AND PROCEDURAL HISTORY
On October 16, 1992, Susan Mott Clary (Clary) was driving south on Interstate 110 (I-110). It had been raining earlier in the day and the streets were still wet because of an intermittent drizzle of rain. This part of I-110 consists of a straight stretch of the interstate. As Clary drove her vehicle in the inside lane of traffic, she lost control and collided with the retaining wall that separated northbound and southbound traffic. As a result of this collision, Clary's vehicle was disabled in the inside lane of traffic.
About this time, Darren K. Shipp (Shipp), an employee of Stepper Transport, was traveling south on I-110 in an eighteen-wheel gravel truck, on his way to pick up a load of gravel. Shipp had been traveling in the middle lane, but he moved into the inside lane when he saw brake lights of several vehicles in front of him. However, once Shipp got into the inside lane, he saw the Clary vehicle's emergency flashers and realized that her vehicle was stopped in the inside lane. Because of the traffic in the two outer lanes, Shipp could not get back in the middle lane. Shipp stopped his truck in the inside lane, activated the emergency flashers, and decided to see what the problem was with the stalled vehicle. As Shipp came to a stop, he saw an East Baton Rouge Parish Sheriff's Office vehicle coming behind him in the inside lane of the interstate.
Shipp got out of his truck to check on Clary and her vehicle. Clary was not hurt, but she informed Shipp that her car could not be moved. Shipp informed Clary about the arrival of the sheriff's office vehicle and proceeded to tell the sheriff's deputies about the disabled Clary vehicle. However, William Fussell (Fussell), the deputy driving the sheriff's office vehicle, had already notified the sheriff's office communications center about the accident. The communications *866 center then notified the city police dispatcher and a city police unit was immediately dispatched to the accident scene.
The vehicle operated by Deputy Fussell was a bus-type vehicle, commonly referred to as a paddy wagon. The paddy wagon was used to transport prisoners between the parish prison and the courthouse. It had rear emergency flashers; however, the only other emergency light on the paddy wagon was located on the front dashboard. At the time of the accident, Deputies Fussell and Leonard Mathis were on their way to the courthouse to drop off a prisoner for a court appearance. After reporting the accident and verifying through Shipp that there were no injuries and that Shipp would remain on the scene until further assistance arrived, the deputies left the scene to finish transporting the prisoner to his court appearance.
Seconds after the paddy wagon left the scene, Shipp was in his truck preparing to set up his neon triangles to warn the traffic behind him of the disabled vehicle. Just as Shipp stuck his head inside his truck, Sonya Sharmel Harrison (Harrison) rear-ended Shipp's eighteen wheeler. Harrison was unlicensed and was operating her mother's vehicle for the first time. Immediately before the accident, Harrison was driving in the south inside lane of I-110. Harrison contends she did not see Shipp's truck in time to stop and consequently, she rammed into the rear of the eighteen wheeler. Her one-year-old daughter Crystal and her three-year-old daughter Ashley were both riding unrestrained in the front seat at the time of the collision. As a result of the collision, Ashley died.
Harrison filed suit against the sheriff's department, alleging that the two deputies who left the scene of the first accident were at fault for Harrison's accident through their failure to assist a stalled motorist on a state highway and their failure to report an emergency situation.[1] She later amended her suit to allege that the deputies were negligent by failing to secure the scene of the first accident, failing to direct traffic away from the accident, failing to warn oncoming traffic of the accident, failing to remove the Clary vehicle and failing to remain on the scene until other police or sheriff's units arrived.
In October 1994, the sheriff's office filed a motion for summary judgment seeking a dismissal from the suit on the ground that under the undisputed facts of the case, it owed no duty to Harrison beyond reporting the accident to the proper authorities. The trial court granted the sheriff's department's motion for summary judgment and dismissed it from the litigation in November 1994. Harrison appealed and this court reversed the grant of summary judgment because the depositions relied on by the parties and the trial court in support of the grant of summary judgment were not a part of the appellate record. Harrison v. Shipp, 95-0299 (La. App. 1st Cir.10/6/95), 662 So.2d 881. Subsequently, the sheriff's office filed a second motion for summary judgment and filed the depositions that were relied on in the motion and supporting memorandum. Once again, the trial court granted the sheriff's office's motion for summary judgment and dismissed the sheriff's office from Harrison's suit. In its oral reasons for judgment, the trial court found that the sheriff's office deputies did not owe a duty to Harrison under the facts of the case. The judgment granting the motion for summary judgment was signed on September 17, 1997.
Harrison appealed urging in her one assignment of error that the trial court erred in granting summary judgment under the specific facts of the case. Appellant argued that the sheriff's deputies who stopped at the scene of the Clary accident should have taken action to secure the scene of the accident which occurred in the main travel lane of a heavily congested interstate highway during a rain storm.

MOTION FOR SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine factual dispute. *867 The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966. Rambo v. Walker, 96-2538, p. 4 (La.App. 1st Cir.11/7/97); 704 So.2d 30, 32.
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to provide factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966.
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Rambo v. Walker, 704 So.2d at 32-33.

EXISTENCE OF GENUINE ISSUES OF MATERIAL FACT
Harrison contends summary judgment was improper because genuine issues of material fact existed. She specifically asserts that there were factual issues regarding the amount and severity of rainfall occurring at the time of the accident. We disagree.
A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Rambo v. Walker, 704 So.2d at 32.
Under the facts of this case, the amount and severity of rainfall at the time of the accident is not pertinent to the issue of what duty was owed by transportation deputies who, while in the process of transporting a prisoner, came upon an accident scene where there was no personal injury. Moreover, in its brief, the sheriff's office concedes for the purposes of its motion for summary judgment that it was raining heavily at the time the deputies stopped the paddy wagon at the accident scene. Thus, there are no genuine issues of material fact that would preclude summary judgment in this case.

DUTY OF SHERIFF'S DEPUTIES AT THE SCENE OF AN ACCIDENT
Harrison contends that the deputies owed her a duty to remain at the Clary accident scene and secure the area by directing traffic around the first accident. Under the particular facts of this case, we do not agree.
The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question. Harris v. Pizza Hut of Louisiana, 455 So.2d 1364, 1371 (La.1984). A duty may be imposed by legislation or by rule of law. The inquiry is whether the plaintiff has any law statutory, jurisprudential, or arising from general principles of faultto support her claim. Rambo v. Walker, 704 So.2d at 33.
In the case sub judice, we find that the deputies did not owe a duty to Harrison to take any action beyond reporting the accident. It is undisputed that when the deputies arrived on the scene, Shipp was already stopped behind the Clary vehicle with the emergency flashers activated on Shipp's eighteen wheeler. The deputies saw the emergency lights flashing two blocks away. Traffic was already jammed and was therefore moving slowly to get past the accident scene. The emergency devices on the paddy wagon were emergency flashers similar to those on the eighteen wheeler.
Importantly, Deputies Fussell and Mathis were transportation deputies who were in the *868 process of transporting a prisoner in the paddy wagon to the district courthouse. The primary duty of the deputies was to safely and successfully transport the prisoner to court. Had they remained on the scene, they would have put the general public at risk of a possible escape by the prisoner while the deputies took control of the accident scene. Additionally, they would have placed the prisoner at risk of an injury in the event of a subsequent accident involving the paddy wagon.
Finally, we note that the paddy wagon did not have an emergency light bar on the roof of the vehicle. Instead, the only police emergency light was located on the dash in the front of the vehicle, which light was not visible from behind the paddy wagon. The eighteen wheeler driven by Shipp was equipped with the same or similar emergency flashers, emergency flares and reflector equipment as that located on the paddy wagon. Consequently, the deputies were acting pursuant to the policy of the sheriff's department by stopping to ascertain whether anyone was injured, reporting the accident, and then continuing with their transportation of the prisoner.
Thus, in light of the undisputed particular facts of this case, we find that the sheriff's office and its deputies did not owe a duty to Harrison to remain on the scene of the accident, secure the accident scene and direct traffic until other police units arrived. These deputies acted reasonably under the circumstances presented by this case and did not owe any duty beyond their actions of ascertaining there was no injury and promptly reporting the accident. The trial court properly granted the motion for summary judgment filed by the sheriff's office.

CONCLUSION
For these reasons, the judgment of the trial court is affirmed. Appellant is assessed with the costs of this appeal.
AFFIRMED.
SHORTESS, C.J., concurs.
NOTES
[1] Harrison also sued Shipp; his employer, Stepper Transport; the owner of the eighteen wheeler, Landrineau; Clary and their insurers. These other defendants were dismissed pursuant to a settlement agreement.