775 So.2d 11 (2000)
Dr. Allen J. ELLENDER, Jr., et al.
v.
GOLDKING PRODUCTION COMPANY and Denovo Oil & Gas Company.
No. 99CA0069.
Court of Appeal of Louisiana, First Circuit.
June 23, 2000.
Rehearing Denied August 15, 2000.
Writ Denied February 16, 2001.
*13 Virgil A. Lacy, III, Metairie, James M. Funderburk, Houma, Counsel for Plaintiffs/Appellants, Allen Ellender, et al.
Richard F. Zimmerman, Jr., Baton Rouge, Counsel for Defendant/Appellee, Olin Corp.
Matthew J. Randazzo, III, New Orleans, Counsel for Defendant/Appellee, Concise Oil & Gas.
Bruce Schewe, New Orleans, Counsel for Defendant/Appellee, G S Oil & Gas Co.
John Y. Pearce, New Orleans, Counsel for Defendant/Appellee, DeNovo Oil & Gas.
James M. White, III, New Orleans, T. Brooke Farnsworth, Houston, TX, Counsel for Defendant/Appellee, Austral Exploration.
Scott A. O'Connor, New Orleans, Counsel for Defendant/Appellee, Goldking Oil & Gas.
B. Richard Moore, Jr., New Orleans, Counsel for Defendant/Appellee, La. Intrastate Gas Co.
Before: LeBLANC and FOIL, JJ., and KLINE[1], J. Pro Tem.
LeBLANC, J.
The issues before us in this appeal are whether the lower court erred as a matter of law in applying the three year prescriptive period of La. C.C. art. 3494(5) and whether the defense of contra non valentem is available to plaintiffs to defeat defendants' plea of prescription.

FACTS AND PROCEDURAL HISTORY
The procedural history of this matter is lengthy and complex, involving eight supplemental and amending petitions by plaintiffs, numerous orders for substitution of parties plaintiff, the naming and dismissal of multiple defendants, and the filing of copious motions and exceptions. We will limit our discussion of the facts to those deemed essential to the issues raised in this appeal.
In the 1970s, landowners[2] of property located in the area of Terrebonne Parish known as the Montegut Field negotiated mineral leases for oil and gas exploration and production with various oil producers.[3] Pursuant to the mineral leases, the landowners were due royalty payments on any minerals produced. Gas produced from the Montegut Field was sold under contracts to Louisiana Intrastate Gas Corporation (LIG). In 1983, the contract price to be paid for gas purchased was renegotiated by LIG. LIG was obligated to pay to the defendant-producers "the best price" for the gas it purchased.
The landowners brought suit. In their fifth petition they allege that the defendant-producers allowed LIG to "pay a price for gas ... less than the highest price being paid by LIG in other fields in Terrebonne Parish" and "failed to act prudently in the operation of the Subject Leases". Plaintiffs sought royalties, damages, interest, monetary relief and attorney fees.
Several named defendants filed a motion for summary judgment, arguing the three year prescriptive period set forth in La. C.C. art. 3494(5) governed plaintiffs' *14 claims. In response, plaintiffs asserted this is a breach of contract case subject to the ten year prescriptive period of La. C.C. art. 3499. Plaintiffs claimed their damage is from the breach of the implied obligation to prudently market and sell the gas produced, although admittedly measured as the difference in the amount of royalty paid and the amount of royalty that would have been due if the gas had been prudently marketed. Alternately, plaintiffs urged the application of the doctrine of contra non valentem agere nulla currit praescriptio.
The district court granted defendants' motion for summary judgment, holding that the claims by plaintiffs were claims for underpaid royalties, governed by article 3494(5), and that the running of prescription was not suspended under the doctrine of contra non valentem.[4] Plaintiffs appeal, and two named defendants have answered plaintiffs' appeal.

I.
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966; Rambo v. Walker, 96-2538, p. 4-5 (La.App. 1 Cir. 11/7/97), 704 So.2d 30, 32.
The burden is on the mover first to show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Only after the mover has met this initial burden may summary judgment be rendered against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim. La. C.C.P. art. 966 B and C. Once a party seeking a summary judgment properly supports the motion and carries his burden of proof, the law requires the non-moving party who opposes the motion for summary judgment to submit evidence showing the existence of specific facts establishing a genuine issue of material fact, effectively shifting the burden of proof to the non-moving party. The non-moving party is no longer allowed to rely on the allegations of its pleadings in opposition to a properly supported motion for summary judgment. Scott v. McDaniel, 96-1509, p. 5 (La.App. 1 Cir. 5/9/97), 694 So.2d 1189, 1191-92, writ denied, 97-1551 (La.9/26/97), 701 So.2d 991.
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Rambo, 96-2538 at 5, 704 So.2d at 32-33.

II.
Louisiana Civil Code article 3494(5) provides: "The following actions are subject to a liberative prescription of three years: ... An action to recover underpayments or overpayments of royalties from the production of minerals...." However, article 3499 provides: "Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years." If plaintiffs' claims are for royalties, the controlling prescriptive period is three years; if the claims are for damages relative to a breach of contract, plaintiffs' claims do not prescribe for ten years.
*15 In order to determine whether a claim is one for royalties, the court must look to the petition. Wilson v. Palmer Petroleum, Inc., 97-2386, p. 5 (La.App. 1 Cir. 11/26/97), 706 So.2d 142, 145, writ denied, 97-3204 (La.3/13/98), 712 So.2d 879. Plaintiffs quote extensively in brief to this court from their Fifth Supplemental, Amended and Restated Petition, wherein they assert:
[Defendants] failed to seek and receive from LIG prices in the ..... Montegut Field which were at least as high as the highest price paid by LIG in any other field in Terrebonne Parish ... and [defendants] failed to act prudently in the operation of the Subject Leases ....
The [defendants] acted in their own self-interest, despite the expressed and implied terms of the Subject Leases and the obligations imposed by the Louisiana Mineral Code. Moreover, the [defendants] acted imprudently and failed to administer the Subject Lease ... by their total and complete abandonment of the marketing duties imposed on them by the Subject Leases and the Louisiana Mineral Code.
* * *
...[T]hus, the [defendants'] actions constitute breaches of their obligations under the Subject Leases and ... the Louisiana Mineral Code.
Article 122 of the Louisiana Mineral Code, found at La. R.S. 31:122, provides:
A mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor. Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee.
The Comments contain the following narration:
In Louisiana, the general obligation to act as a "good administrator" or "prudent operator" has been clearly specified in four situations: (1) the obligation to develop known mineral producing formations in the manner of a reasonable, prudent operator; (2) the obligation to explore and test all portions of the leased premises after discovery of minerals in paying quantities in the manner of a reasonable, prudent operator; (3) the obligation to protect the leased property against drainage by wells located on neighboring property in the manner of a reasonable, prudent operator; and (4) the obligation to produce and market minerals discovered and capable of production in paying quantities in the manner of a reasonable, prudent operator. Additionally, the obligation of the lessee to restore the surface of the lease premises on completion of operations may be viewed as a part of this general standard.
* * *
Diligence in marketing: A mineral lessee is under a duty to exercise reasonable diligence to secure a market for minerals that have been produced or are capable of being produced in paying quantities. There is rarely a problem in this regard where oil is being produced, as ready markets can usually be found. Most problems arise in connection with the marketing of gas where the magnitude of reserves has not been proved, a market is not readily available, marketing facilities are not available, or administrative delays are involved.
Although plaintiffs maintain their claims are for an alleged breach of contract, i.e. the duty to prudently market, we find their claims to be for the underpayment of royalties. By choice of words and artful phrasing, the plaintiffs attempt to alter the controlling prescriptive period. However, the underpayment of royalties is why plaintiffs seek redress.
*16 In Parker v. Ohio Oil Company, 191 La. 896, 915-17, 186 So. 604, 610-11 (1939), the Supreme Court held plaintiffs' demand for an accounting of and payment for all royalties due from property inherited by plaintiffs to be subject to the three-year prescriptive period now found in article 3494(5). The court stated:
The plaintiffs are not entitled to the benefit of the ten-year prescriptive period... because they have demanded that defendant furnish a statement showing the amount of oil produced and its value. They cannot be permitted to reap the benefits of the longer prescriptive period merely by calling their suit one for an accounting.
Parker, 191 La. at 917, 186 So. at 611.
The plaintiffs petition for an accounting of royalties, payment due, and damages in Acadia Holiness Association v. IMC Corporation, 616 So.2d 855, 857 (La.App. 3 Cir.), writ denied, 620 So.2d 842 (1993), was also held to be a suit for underpayment of royalties, subject to a three-year prescriptive period. The Court in Acadia relied on Breaux v. Pan American Petroleum Corporation, 163 So.2d 406 (La.App. 3 Cir.), writ denied, 246 La. 581, 165 So.2d 481 (1964) and from Breaux we also are guided.
The plaintiffs in Breaux brought an action for damages alleged to have been sustained by them as a result of a breach by defendants of an implied condition in their mineral lease. The breach by the defendants in Breaux was failure to protect plaintiffs from the drainage of oil and gas from beneath the surface of their land. As cited above, the general obligation of the lessee to act as a "good administrator" has been specified in four situations: (1) the obligation to develop; (2) the obligation to explore; (3) the obligation to protect against drainage; and (4) the obligation to produce and market minerals discovered. An action for the breach of the obligation to protect against drainage was held in Breaux to be a royalty claim. See Breaux, 163 So.2d at 415.
Likewise, an action for the breach of the obligation to market is a royalty claim. In La. R.S. 31:213(5) royalty is defined as "any interest in production, or its value, from or attributable to land subject to a mineral lease, that is deliverable or payable to the lessor or others entitled to share therein. Such interests in production or its value are `royalty[.]'" The rights and interests asserted by plaintiffs in the instant matter are for the plaintiffs' interest in the value of the oil that was allegedly imprudently marketed and undersold. They seek to assert their claim to royalties. A royalty claim does not change its identity based on its characterization. See Wilson, 97-2386 at 5, 706 So.2d at 145. As royalty claims, plaintiffs' claims are subject to the three year prescriptive period found in article 3494(5). We find no merit to this assignment.

III.
In the alternative, plaintiffs urge the application of the doctrine of contra non valentem agere nulla currit praescriptio raises genuine issues of material fact such that summary judgment was improper. The judicially created doctrine of contra non valentem is an exception to the general rule of prescription and is based on the civilian concept that prescription does not run against a party who is unable to act. American Casualty Company v. Security Industrial Insurance Company, 98-2075, p. 4 (La.App. 1 Cir. 11/5/99), 745 So.2d 832, 834. The doctrine is applied in four general situations:
(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
(2) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) where the debtor himself has done some act effectually to prevent the creditor *17 from availing himself of his cause of action;
(4) where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
Corsey v. State, Department of Corrections, 375 So.2d 1319, 1321-22 (La.1979). Contra non valentum is an exceptional remedy recognized by our jurisprudence which is in direct contradiction to the articles in the Civil Code and therefore should be strictly construed. La Plaque Corporation v. Chevron U.S.A., Inc., 93-1597, p. 4-5 (La.App. 4 Cir. 5/26/94), 638 So.2d 354, 356, writ denied, 94-2125 (La.11/11/94), 644 So.2d 395.
Plaintiffs assert the defendants' actions prevented them from availing themselves of their cause of action and that their cause of action was not reasonably knowable.
In the instant case, we find plaintiffs have raised no genuine issue of material fact concerning either allegations or evidence of acts by the defendants which prevented plaintiffs from availing themselves of their cause of action, nor do we find any issue of fact concerning whether plaintiffs' cause of action was known or could have been discovered through the exercise of reasonable diligence. Although plaintiffs argue the defendants failed to inform them of specific information, such as the reasons for the drop in the price of natural gas in the 1980's or defendants' legal position asserted in other collateral litigation, there is no allegation of an act by defendants that prevented plaintiffs from availing themselves of their cause of action. There is no issue of fact concerning any act by defendants that prevented plaintiffs from acting.
In addition, plaintiffs surely had knowledge that the amount paid to them by defendants was diminishing during the 1980's. The dollar amount of the checks the plaintiffs received during that time period was dramatically less. While it might be argued that each and every plaintiff did not inform himself of the provisions of every other gas contract from the Montegut Field, and therefore was not able to determine if he were receiving the "best" price, the obvious substantial reduction in their royalty checks alone was enough to alert them to question and attempt to protect their interests. Simple friendly inquiry among family members and neighbors was available and would have done much to enlighten plaintiffs, and the price paid for gas from the Montegut Field, and elsewhere, is a matter of public record maintained by the Louisiana Public Service Commission. See La Plaque Corporation v. Chevron U.S.A., Inc., 93-1597, p. 7 (La.App. 4 Cir. 5/26/94), 638 So.2d 354, 357. In the fourth situation described above, contra non valentem will not except a plaintiffs claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned. Corsey, 375 So.2d at 1322. There is no issue of fact concerning what plaintiffs could have reasonably known. Plaintiffs' inaction is not excused under the doctrine of contra non valentum. There is no merit to this assignment. The judgment of the district court is affirmed.

IV.
Lastly, we address the answers filed by two of the named defendants in this matter. Olin Corporation and DeNovo Oil & Gas, Inc. each filed an answer to plaintiffs' appeal, raising the issue of the district court's denial of their motions for summary judgment wherein each sought dismissal of plaintiffs' claims.[5] The denial of a motion for summary judgment is an interlocutory judgment and is not appealable. *18 Varnado v. Hospital Service District No. 1 of Parish of Assumption, 98-0468, p. 4 (La.App. 1 Cir. 4/1/99), 730 So.2d 1066, 1068; see La. C.C.P. arts. 968 and 1841. The issues raised in the answers to the appeal are not properly before us, and the defendants' answers to the appeal are dismissed.

CONCLUSION
For the above and foregoing reasons, we find no error with the district court's judgment. The decision of the district court is affirmed, and all costs of the appeal are assessed against the plaintiffs.
AFFIRMED.
KLINE, J. Pro Tem., concurs with reasons.
FOIL, J., dissents
KLINE, J. Pro Tem., concurring.
For the following reasons, I respectfully concur in the result reached by the majority. I agree that LSA-C.C. art. 3494(5) provides the applicable prescriptive period under the particular facts of this case. As correctly stated by the majority, the pleadings govern the applicable prescriptive period. In the present case, the plaintiffs alleged a breach of the marketing duties imposed on the defendants by the subject leases and the Louisiana Mineral Code, as well as a breach of the defendants' obligation to operate the subject leases prudently. However, the only damages sought by the plaintiffs were money damages, measured by the amount of the alleged underpayment of royalties in the Northeast Montegut Field, along with interest and attorney fees. The plaintiffs also prayed for damages "double the amount of royalty found to be due herein...."
Thus, in light of the facts and holding in Acadia Holiness Association v. IMC Corporation, 616 So.2d 855 (La.App. 3rd Cir.), writ denied, 620 So.2d 842 (La.1993), relied upon by the majority, and in consideration that the only damages sought by the plaintiff in the present case are measurable by the amount of royalties due, but not paid, I agree that LSA-C.C. art. 3494(5) provides the applicable prescriptive period.
However, if the remedy sought by the plaintiffs had been different, such as cancellation of the lease or specific performance of the lessees' duties under the lease, this same prescriptive period may not have been applicable.
FOIL, J., dissenting.
I feel that a 10 yr. period is applicable.
NOTES
[1] Judge William F. Kline, Jr., retired, serving by special appointment of the Louisiana Supreme Court.
[2] The named plaintiffs in the original petition filed in this matter number over 75.
[3] The defendant-producers named in plaintiffs' petitions number over 25.
[4] The district court issued two separate judgments, dated February 5 and August 13, 1998. In a subsequent order, the district court designated the August 13 judgment a final and appealable judgment, pursuant to La. C.C.P. art. 1915.
[5] Olin's motion was based on a lack of duty; DeNovo's motion was based on lack of contractual privity.