| «CARTER, C.J.
This matter comes before this court on a writ of certiorari granted to consider the correctness of the trial court’s judgment on cross motions for summary judgment raising the issue of what constitutes proof of mailing under Louisiana Revised Statute 22:636.4.
FACTS AND PROCEDURAL HISTORY
Cate Street Investments, L.L.C. (Cate Street) is the owner of a building located at 223 South Cate Street in Hammond, Louisiana. On April 25, 2000, Guerin Agency, Inc. procured for the property a commercial insurance policy issued by American Central Insurance Company. The policy was for the period April 3, 2000 through April 3, 2001. The policy was a “direct bill” policy, in which the insured was to be billed directly; Guerin Agency was not involved with the billing.
OneBeacon Insurance Company (One-Beacon) performed all of the billing services for American Central. It is undisputed that American Central had a fully automated process for the preparation and mailing of cancellation notices on commercial policies. Having received no premium from Cate Street, on June 14, 2000, the American Central automated billing system generated a cancellation notice. That notice, containing a cancellation date effective July 23, 2000, allegedly was mailed to Cate Street on June 15, 2000. Cate Street denies ever receiving the cancellation notice. A copy of the cancellation notice was sent to the Guerin Agency; the agency received its copy on June 20, 2000.
On November 17, 2000, a fire destroyed the building and contents at 223 South Cate Street. Cate Street made a property loss claim to American Central. American Central denied coverage, asserting the policy had been | cancelled for non-payment of premiums. Cate Street then filed suit against American Central and the Guerin Agency.
American Central filed a motion for summary judgment, asserting that prior to the loss the policy issued to Cate Street had been properly cancelled pursuant to LSA-R.S. 22:636.4. In support, American Central offered a certified copy of the policy, a copy of the cancellation notice sent to Cate Street, a copy of the certificate of mailing stamped by the post office, and excerpts from the depositions of: John Tobin, mail room manager for OneBeacon; Sam Tallo, president of Cate Street; *15 Pamela Smith, an employee of Tallo; David Coffey, the employee in charge of the direct billing department for OneBea-con; Paula Cupp, an underwriter for American Central; and Jack Hearon, an adjustor for American Central. Cate Street filed a cross motion for summary judgment, asserting the policy was in force at the time of the loss. In support, Cate Street offered additional depositions, including that of Charles Guerin of the Gue-rin Agency.
The trial court denied American Central’s motion and granted the motion by Cate Street, finding the evidence presented insufficient to establish proof of mailing of the notice of cancellation as required by LSA-R.S. 22:636.4. It is from that judgment that American Central seeks this supervisory writ.
LAW AND ANALYSIS
The legal principles regarding summary judgment are well settled. Appellate courts review summary judgments de novo under the same criteria followed by the trial court. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. The summary judgment procedure is favored and is designed to secure the just, speedy, and | ^inexpensive determination of every action. LSA-C.C.P. art. 966 A(2); Rambo v. Walker, 96-2538 (La.App. 1 Cir. 11/7/97), 704 So.2d 30, 32. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is “material” for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Dickerson v. Piccadilly Restaurants, Inc., 99-2633 (La.App. 1 Cir. 12/22/00), 785 So.2d 842, 844.
A commercial property insurance policy can be cancelled only in accordance with LSA-R.S. 22:636.4, which in 2000 provided in pertinent part:[1]
B. For the purposes of this Section, the following terms shall mean:
(1) “Cancellation” means termination of a policy at a date other than its expiration date.
* * *
(3) “Nonpayment of premium” means the failure or inability of the named insured to discharge any obligation in connection with the payment of premiums on a policy of insurance subject to this regulation, whether such payments are payable directly to the insurer or its agent or indirectly payable under a premium finance plan or extension of credit.
[[Image here]]
C. (1) If coverage has not been in effect for sixty days and the policy is not a renewal, cancellation shall be effected by mailing or delivering a written notice to the first-named insured at the mailing address shown on the policy at least sixty daysRbefore the cancellation effective date, except in cases where cancellation is based on nonpayment of premi *16 um. Notice of cancellation based on nonpayment of premium shall be mailed or delivered at least ten days prior to the effective date of cancellation. After coverage has been in effect for more than sixty days or after the effective date of a renewal policy, no insurer shall cancel a policy unless the cancellation is based on at least one of the following reasons:
(a) Nonpayment of premium.
[[Image here]]
(2)(a) A notice of cancellation of insurance coverage by an insurer shall be in writing and shall be mailed or delivered to the first-named insured at the mailing address as shown on the policy. Notices of cancellation based on ... R.S. 22:636.4(C)(l)(a) shall be mailed or delivered at least ten days prior to the effective date of cancellation. The notice shall state the effective date of the cancellation.
* * *
F. Proof of mailing of notice of cancellation, or of nonrenewal or of premium or coverage changes, to the named insured at the address shown in the policy, shall be sufficient proof of notice (emphasis added).
As the issue of what constitutes “proof of mailing” in the context of LSA-R.S. 22:636.4 F is a matter of first impression, we turn for guidance to jurisprudence evaluating similar statutory provisions. In Williams v. Storms, 01-2820 (La.App. 1 Cir. 11/8/02), 835 So.2d 755, this court considered the issue of cancellation of insurance coverage under an automobile insurance policy. The insured had failed to pay the premium due, and the insurer had cancelled the policy in accord with the cancellation provisions of LSA-R.S. 22:636.1, specifically subsection F, which provided:
Proof of mailing of notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice.
The Williams insured was then involved in an automobile accident and brought an action against her insurer. The insured denied receiving the notice of cancellation. This court stated,
|7In a cancellation of insurance case, the burden of proof first rests upon the insurer to prove by prima facie evidence proof of mailing of notice to the insured. Where the insurer meets the burden of proof, a presumption of delivery is established, which then may be rebutted by the insured by proof of nondelivery. The insured has the burden of proof to establish the nondelivery. Folds v. Protective Casualty Insurance Company, 26,323, p. 6 (La.App. 2nd Cir.12/7/94), 647 So.2d 1215, 1218. When an insured has filed sworn testimony in opposition to a motion for summary judgment, denying delivery of notice of cancellation, jurisprudence has held that a genuine issue of material fact is raised thereby and summary judgment is inappropriate. See Ray v. Associated Indemnity Corporation, 373 So.2d 166, 170 (La.1979).
Williams, 835 So.2d at 761.
This statement of the law was based on jurisprudence relying on the interpretation of LSA-R.S. 22:636, the general statutory provision governing cancellation by an insurer, which clearly provides for a rebutta-ble presumption,[2] rather than 22:636.1, the statutory provision governing the cancella *17 tion of automobile insurance. However, based on the supreme court’s decisions in Cuccia v. Allstate Ins. Co., 262 La. 545, 263 So.2d 884 (1972) and Ray v. Associated Indem. Corp., 373 So.2d 166 (La.1979), this court felt constrained in Williams to disallow the resolution of the issue of receipt of notice of cancellation on a motion for summary judgment. In Cuccia, 262 La. at 556, 263 So.2d at 888, the supreme court found a genuine issue of material fact was raised by the insured’s assertion that the notice of cancellation of an automobile insurance policy had not been received. In Ray, 373 So.2d at 170, the supreme court found a genuine issue of material fact was raised by the insured’s assertion that the premium notice for an automobile insurance policy had not been received. Similarly, this court concluded that the credibility issue raised by the insured’s denial of receipt |sof the notice of cancellation precluded summary judgment. Williams, 835 So.2d at 763.
With these legal precepts in mind, we turn to the specifics of the case at hand. The deposition testimony of John Tobin, manager of the Output Management Department for OneBeacon, established that OneBeaeon’s Output Management Department was responsible, for printing and mailing bills and notices of cancellation for American Central. Tobin stated an operator in the Output Management Department would load paper into a printing machine and run a computer program, supplied by the Information Technology (IT) Department, to print certain documents. Cancellation notices were run under a job number. The cancellation notices from each job number were printed, inserted into envelopes, sealed, stamped, and placed in trays. A certificate of mailing, also produced by the IT program, listed each of the cancellation notices printed in a job number. The certificate of mailing of each job number and the corresponding tray of cancellation notices from each job number were then transported to the post office. The post office certified, as evidenced by an official post office cancellation affixed to the certificate of mailing, that each tray of cancellation notices and its corresponding certificate of mailing matched.
In his deposition, David S. Coffey, the OneBeacon manager of direct bill operations, stated the process of generating and mailing cancellation notices was totally automated. If a premium payment was not received, the system automatically issued a cancellation notice. The certificate of mailing, generated by the system, tracked the cancellation notices, and the post office certification on the certificate of mailing certified the cancellation notices were placed in the United States mail.
| flAmerican Central also submitted a copy of the notice of cancellation allegedly sent to Cate Street at 112 W. Thomas Street in Hammond, Louisiana,[3] on June 15, 2000, with an effective cancellation date of July 23, 2000, and a copy of the June 15, 2000 post office-certified certificate of mailing, which listed Cate Street in the run of cancellation notices mailed that day. Thus, American Central asserts the testimony and evidence establish that the notice of cancellation was properly prepared and was, in fact, mailed to Cate Street at least ten days prior to the effective date of cancellation, fulfilling all of the requirements of LSA-R.S. 22:636.4.
The testimony and evidence established a regular office practice and procedure for *18 sending a notice of cancellation for nonpayment of premiums. Notices of cancellation were automatically generated and sent to the named insureds when a premium payment was not received. Individuals with personal knowledge of the regular course of business testified concerning the procedure for mailing notices of cancellation; however, no one was able to personally verify that the notice actually was mailed to Cate Street. Tobin admitted that no one at the insurance company checked the completed envelopes to confirm that an envelope existed for each insured shown on the list of cancellation notices.
The evidence presented in support of, and in opposition to, these cross motions for summary judgment simply does not support American Central’s claim that mailing of the notice of cancellation on June 15, 2000 is uncontroverted. Cate Street has denied receipt of the notice. Pamela Smith, the employee responsible for opening all of Cate Street’s incoming mail and |infor Cate Street’s bookkeeping, stated her regular practice is to create a file for each insurance policy. Each file would contain a copy of the policy, a copy of the invoice, and the check stub from payment of the invoice. After the claim was denied, Smith searched the American Central file and discovered it contained only the policy, but no invoice or check stub. Smith unequivocally stated in her deposition that she did not recall ever receiving the cancellation notice. Similarly, Cate Street’s president, Sam Tallo, denied receiving the notice of cancellation. Smith’s and Tallo’s depositions are not the only evidence offered to refute the allegation that the notice of cancellation was mailed.
The June 14, 2000 cancellation notice created by American Central’s automated process states: “The following mortgagees have been sent a copy of this notice: Central Progressive Bank....” Although the notice of cancellation contains language showing that Central Progressive Bank had been sent a copy of the notice of cancellation, it is undisputed that Central Progressive Bank was not mailed a copy of the notice of cancellation. American Central explained that it was company policy to not send notices of cancellation to mortgagees, and it acknowledged that it paid Central Progressive Bank, as the mortgagee named on the insurance policy, the liability limit on the Cate Street Building.
CONCLUSION
In deciding a motion for summary judgment, the court cannot make credibility determinations and must assume that all of the affiants are credible. Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533 (La.2/20/04), 866 So.2d 228, 234. Inasmuch as summary judgments deprive the litigants of the opportunity to present their evidence to a jury, Inthey should be granted only when the evidence presented at the motion for summary judgment establishes that there is no genuine issue of material fact in dispute. Williams, 835 So.2d at 763. Consequently, we conclude Smith’s and Tallo’s statements that they never received the cancellation notice, the undisputed fact that the mortgagee was not mailed a copy of the notice of cancellation although the notice contains a contrary declaration, and the absence of a person to verify that the notice of cancellation actually was mailed to Cate Street, raise a genuine issue of material fact as to the mailing of the cancellation notice and preclude summary judgment. The matter presents credibility determinations, coupled with contradictory evidence, that cannot be resolved on a motion for summary judgment.
*19 For these reasons, we find the trial court erred in granting the motion for summary judgment filed by Cate Street Investments, L.L.C., and we find no error in the denial of the motion for summary judgment filed by American Central Insurance Company.
WRIT GRANTED IN PART; WRIT DENIED IN PART.
PARRO and GUIDRY, JJ., concur.

. Where the statute in question is amended subsequent to the time of contracting, the amendment cannot be applied retroactively to alter the obligations of the contract, even when the act giving rise to the obligation occurs after the effective date of the amendment. See Block v. Reliance Ins. Co., 433 So.2d 1040, 1044 (La.1983). As the contract of insurance was confected in 2000 and the incident giving rise to the alleged obligation occurred in 2000, the subsequent amendments to LSA-R.S. 22:636.4 are inapplicable.

. The affidavit of the individual making or supervising such a mailing, shall constitute prima facie evidence of such facts of the mailing as are therein affirmed. LSA-R.S. 22:636 C.

. The policy shows 112 W. Thomas Street in Hammond, Louisiana, as Cate Street’s address.