517 So.2d 1125 (1987)
Robert J. PRESTON
v.
Kenneth GRANGER and State Farm Insurance Company.
Arne V. OLSEN, Jr.
v.
Kenneth GRANGER and State Farm Insurance Company.
Nos. 87-CA-454, 87-CA-455.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1987.
Writ Denied February 12, 1988.
*1127 Anthony S. Taormina, Metairie, for plaintiff/appellant.
Joseph R. Ward, Jr., M.P. Calvin, Ward & Clesi, New Orleans, for defendant/appellee.
Before BOWES, GAUDIN and GOTHARD, JJ.
GOTHARD, Judge.
This is a personal injury suit. The two injured plaintiffs appeal from a judgment in favor of State Farm Insurance Company, the liability insurer of the tortfeasor, Kenneth Granger.
The plaintiffs, Olsen and Preston, sued the defendant insurer for their damages, basing their claims on the homeowner's insurance policy issued to Granger. The policy excluded liability coverage for bodily injury "expected or intended by the insured." The jury returned a verdict on a jury interrogatory unanimously finding that Granger intentionally inflicted the injuries to the plaintiffs. The trial judge thereafter entered judgment on that verdict in favor of defendant and dismissed the plaintiffs' claims.[1]
The incident in question producing the plaintiffs' injuries was apparently the result of a dispute involving Granger and his estranged wife and mother-in-law over $10,000, which Granger felt was owed to him from a recent judicial property partition with his wife.
It seems the dispute began on April 6, two days before the incident, when Granger had gone to his ex-wife's home to see their two year old son. The adults then quarrelled about the money with Granger afterwards leaving in anger though still taking the child out for a short visit. After Granger had gone, Ms. Granger discovered that the boards which secured her bathroom window from opening had been removed, apparently by Granger. This caused Ms. Granger some concern that Granger might have plans to return later and harm her, so she arranged for her brother, the plaintiff Olsen, to keep watch at her house while she and the child stayed with their mother two houses down the street. (It seems that Ms. Granger's fears were also based on her recent beating with a coke bottle by Granger's girlfriend, who was also angry over the couple's recent property settlement.) As feared, Granger returned about 1:30 the next morning (April 8). Fortunately, he was spotted by the next door neighbor as he climbed over the fence into his wife's back yard. The neighbor immediately phoned Ms. Granger at her mother's house. She, in turn, phoned Olsen to warn him. Olsen then proceeded with a shotgun to the kitchen door where he encountered Granger carrying a machete. Within minutes the two were in a struggle during which Granger chopped one of Olsen's hands off, and then beat him until he fell to the floor. The shotgun discharged once, but into the kitchen stove, harming no one.
Granger next walked to his mother-in-law's house, broke through a window, and with the machete attempted to chop through a door into the bedroom where the family and a visitor, the plaintiff Preston, had retreated. In Granger's efforts to chop through the door, he injured Preston, who had attempted to hold the door closed to allow the others time to escape through the bedroom window. Preston subsequently shot his pistol through the door, hitting Granger in the hip. Granger fell back giving Preston time to escape. Granger then set fire to the house and was observed by a neighbor when he fled from the house.
The controlling question presented is whether Granger was sane or insane at the time of the offense. If Granger was sane, his actions were intentional, thereby excluding coverage. If Granger was insane, he could not form the requisite intent to inflict injury, so that his acts would not come within the exclusion for intentional torts contained in his liability policy.
*1128 We direct our attention first, however, to evidentiary objections raised by the plaintiffs. Plaintiffs complain, first, that the trial court improperly admitted irrelevant and prejudicial evidence from Granger's criminal trial, including that he was convicted. Secondly, the plaintiffs object to the admission of opinion testimony from the psychiatric expert of the defense which was based on a criminal standard for determining mental status. Plaintiffs allege that the objected to evidence so confused the jury on the question of Granger's sanity for purposes of tort liability, that reversible error has occurred.
The relevance of specific evidence is determined in relation to the scope of the issues in the case at hand. Irrelevant evidence is excluded in order to aid the trier of fact in focusing on what actually is at issue. Louisiana courts have recognized that evidence, although relevant and not excludable under some specific categorical exclusionary rule, may nonetheless be excluded if the court finds that, in the context of the particular case, the probative value of the evidence is substantially outweighed by the dangers inherent in its admission. State v. Ludwig, 423 So.2d 1073 (La.1982).
We have reviewed those portions of the transcript objected to and fail to find any improperly admitted evidence from Granger's criminal trial. We note that the trial judge, at the outset of trial, ordered the attorneys not to inform the jury of Granger's criminal conviction, and this order was diligently followed. The one indication to the jury that Granger might have been convicted came from plaintiff Preston when he testified on direct examination (apparently for purposes of showing his "lost income") that after the offense he continuously traveled rather than seek employment for fear that Granger might get "out of jail" and find him. His testimony was then questioned by the defense attorney on cross examination, being inconsistent with facts he had previously related. Hence, we find no evidentiary error here.
Similarly, we find no merit to plaintiffs' objection to the impeachment of Ms. Granger and plaintiff Olsen with their respective testimony given at Granger's criminal trial. Plaintiffs argue the impeachment evidence was irrelevant and prejudicial. The jury absolutely had the right to consider the prior impeaching testimony, even though from Granger's criminal trial, especially as it dealt with the events precipitating Granger's assault on the plaintiffs. Because Granger is now deceased,[2] this testimony, which also described Granger's behavior on the days prior to the offense, became even more relevant and crucial to the jury's determination on the question of Granger's intent to injure. See, Lefort v. Meibaum Bros., Inc., 321 So.2d 824 (La. App. 4 Cir.1975). April v. Millers Mutual Fire Insurance Co. of Texas, 273 So.2d 50 (La.App. 4 Cir.1973).
We also reject plaintiffs' challenge for irrelevancy and prejudice to the admissibility of certain testimony from psychiatric expert, Dr. Genevieve Arneson, including her answer to a hypothetical question which called for her opinion on Granger's mental status at the time of assault. Because Dr. Arneson was the first psychiatrist to interview Granger after the assault, her observations on his behavior are obviously relevant to the issues here involved. While it is true that Dr. Arneson's observations of Granger were punctuated by the legal standards used in criminal proceedings, this fact was brought to the jury's attention, and the criminal standard of insanity, as it is opposed to the civil standard, was thoroughly explained to the jury. Moreover, the trial judge instructed the jury as to the appropriate law and legal definitions on the issue of Granger's sanity for purposes of tort liability. The trial court is vested with a wide discretion when ruling on the relevancy of evidence, and its ruling will not be disturbed absent a clear abuse of that discretion. See, Lavergne v. Thomas, 491 So.2d 687 (La.App. 1 Cir. 1986), writs denied, 493 So.2d 643 (La.1986); *1129 Citizens Bank and Trust v. Consol. Terminal, 460 So.2d 663 (La.App. 1 Cir.1984). Our review of the record reveals no such abuse has here occurred.
We next consider the issue of Granger's sanity as it regards the critical question of Granger's intent to commit a civil tort against the plaintiffs.
In Louisiana civil liability for intentional torts flows from LSA-C.C. art. 2315 which provides that the damages of the injured party are to be repaired by the one whose fault caused the damages. Here, as stated, State Farm has defended against plaintiffs' damage suit on the basis of an exclusionary clause in the insurance policy which excludes coverage for bodily injury intended by the insured.
The word "intent" for purposes of tort law and for purposes of exclusionary clauses in insurance policies denotes that the actor desires to cause the consequences of his act or believes that consequences are substantially certain to result. Turner v. Bucher, 308 So.2d 270 (La.1975); 7A Appleman, Insurance Law and Practice, Ch. 190 Section 4492.02 (1979). However, if a person is insane, he lacks the capacity to intentionally inflict an injury. von Dameck v. St. Paul Fire & Marine Ins., 361 So.2d 283 (La.App. 1 Cir.1978), writs denied, 362 So.2d 794 and 362 So.2d 802 (La. 1978).
The accepted definition of a person of insane mind as applied to tort liability is that of a person who has such a "want of reason, memory and intelligence" that it "prevents [him] from comprehending the nature and consequences of his acts or from distinguishing between right and wrong conduct", and therefore, "he cannot at the same time intentionally inflict injury." von Dameck, supra at 286, 288. Thus, even though a person may have the intent to harm, his insanity prevents him from having the requisite intent to inflict injury.
In the instant case, to prove Granger's insanity, plaintiffs introduced the testimony of expert psychiatrist, Dr. Richard Richoux. Dr. Richoux had worked in conjunction with defendant's expert psychiatrist Dr. Genevieve Arneson as a member of the sanity commission appointed by the trial judge in Granger's criminal trial. Dr. Richoux saw Granger several times over a four month period for a total of four and one-half hours. He first saw Granger some five days after the offense on April 13, at which time both he and Arneson determined Granger incompetent to stand trial. Both doctors depicted Granger at his initial interview to be depressed about his offense to the point of entertaining the idea of suicide. However these symptoms subsided and by August 18 both doctors found him competent.
Concerning the question of Granger's sanity, Dr. Richoux opined that Granger was psychotic on the basis of Granger's auditory and visual hallucinations and disrupted thinking. Dr. Richoux testified that the psychotic symptoms, although gone within four months, had been evidenced at his initial interview by Granger's visions of the Grim Reaper whom Granger claimed was urging him to come and join him. Dr. Richoux explained that when a person is psychotic he has an inability to carry a thought process through to completion. As applied to Granger, we take Dr. Richoux's testimony to mean that while Granger may have had the desire to harm, and that to do so would be wrong, nevertheless if he was actively psychotic at the time of injury, then his intent to injure would have been impaired by his psychotic thinking. For these reasons, Dr. Richoux felt that Granger was likely insane at the time of the assault. However, Dr. Richoux further testified that inasmuch as he had not had the opportunity of examining any independent sources of data, such as people who could describe Granger's behavior on the day of the assault and shortly before, or police reports formulated at that time, he therefore could not offer a definitive opinion about Granger's sanity. In response to defense counsel's query whether his opinion would alter had he known that Granger had apparently planned the assault on his family that night, Dr. Richoux testified that such evidence would imply a "fairly lengthy thought process putting steps together and reaching a conclusion that *1130 would certainly tend in the direction of legal sanity."
The defense psychiatric expert, Dr. Arneson, on the other hand, found Granger to be unhappy, distraught, disturbed, and suicidal but never mentally ill. She testified that using a criminal standard of legal insanity, she had no doubts of his ability to distinguish right from wrong or of his sanity at the time of his assault on the plaintiffs.
The plaintiffs contend that the only relevant evidence of Granger's mental status at the time of the assault comes from the testimony of their expert, Dr. Richoux. Plaintiffs urge this court to conclude that this testimony, together with the depravity of Granger's act, shows that Granger was insane, and that therefore the jury was manifestly erroneous in finding Granger intentionally inflicted the injuries complained of.
The defense maintains that the facts as testified to by those who observed Granger on the day of the assault and shortly before, indicate his assault was planned and therefore intentional. Accordingly, the defense urges us to affirm the trial court's judgment.
The party alleging insanity bears the burden to affirmatively prove it, since the law presumes that all persons are sane. von Dameck, supra. If, however, the presumption of sanity is successfully rebutted, the insurer then has the burden of proving the applicability of its exclusionary clause by a preponderance of the evidence or be cast in liability.[3]Nettles v. Evans, 303 So.2d 306, 309 (La.App. 1 Cir. 1974). In this regard, plaintiffs urge us to consider that the von Dameck case, supra, would support a finding that Granger was insane, and therefore incapable of intentional assault.
In von Dameck, the insured was determined by the psychiatric experts to be a paranoid psychotic. That determination, coupled with testimony from family members of his recent bizarre behavior and depression from certain stressful events to do with his career, led to the judicial determination of his insanity which prevented him from having the requisite intent to inflict injury necessary to exclude coverage under the liability provisions of his homeowner's policy. Thus the defendant insurer was cast in liability for the wife's wrongful death at the hands of her husband, the insured.
In the instant case, unlike von Dameck, there was no testimony of bizarre or strange behavior from those in repeated contact with Granger just prior to the assault. In addition, while the plaintiffs' doctor found Granger to be actively psychotic for a short period just after the assault, still this same doctor testified that evidence of a planned attack would tend to show him legally sane at the time of the assault.
In cases in which the evidence is in disagreement, the trier of fact is obliged to make credibility decisions based on its reasonable evaluations of witnesses and on its reasonable inferences of fact from the evidence presented. Unless manifestly erroneous this decision should not be disturbed by this court in its appellate review. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1979).
The trier of facthere, a twelve person juryafter being instructed that the insanity of Granger, if proven, would preclude a finding of intentional injury, found that the evidence showed that Granger intended to inflict the injuries complained of. The trial judge thereafter entered judgment on the verdict in favor of the defendant insurer.
After reviewing the evidence, and, in view of the relevant legal principles, we find no manifest error in either the jury's apparent finding that Granger was sane, or their verdict that he intended to inflict the injuries complained of. Accordingly, we hold that the judgment of the trial court is correct.
AFFIRMED.
NOTES
[1] The plaintiffs' suits involving claims growing out of the same incident were initially separate suits, and were consolidated for trial.
[2] Kenneth Granger committed suicide. This fact was brought out during examination of Dr. Richard Richoux by plaintiff Olsen's attorney.
[3] We note the continuing validity of the principle that insanity being a defense personal to the insane person cannot be asserted by his insurer. von Dameck, supra.