764 So.2d 1079 (2000)
Thomas MENSON, et al.
v.
Wendal K. and Rosie J. TAYLOR, Capital Transportation Corporation and XYZ Insurance Company.
No. 99 CA 0300.
Court of Appeal of Louisiana, First Circuit.
April 17, 2000.
*1080 Donald R. Smith, Baton Rouge, for Defendant-Appellant Wendal K. Taylor and Rosie J. Taylor.
Michael P. Colvin, Baton Rouge, for Defendant-Appellee State Farm Fire & Casualty Company.
Wendall G. Lindsay, Jr., Baton Rouge, for Defendant-Appellee Capital Transportation Corporation.
Terry Bonnie, Scott Fruge, Baton Rouge, for Plaintiffs-Appellees Thomas Menson and Gloria Menson.
Before: FOIL, WHIPPLE, and GUIDRY, JJ.
FOIL, J.
This appeal challenges the action of the trial court in granting a motion for summary judgment upon finding a homeowner's insurance policy did not provide coverage for the incident sued upon. We affirm.

FACTS & PROCEDURAL HISTORY
This lawsuit stems from an incident involving two employees of Capital Transportation Corporation (CTC). The facts forming the basis for the instant appeal can be found in the deposition testimony of the employees, as well as two eyewitnesses to the incident. On March 20, 1996, plaintiff, Thomas Menson, was working as a CTC supervisor, when he saw a bus driven by CTC employee Wendal Taylor parked along the side of Nicholson Drive in Baton Rouge near the LSU golf course. Mr. Taylor explained that he arrived at the LSU campus upon completing what he thought was to be his final route for the day when he was ordered by CTC Supervisor Yvonne Prams to drive an additional route. According to Mr. Taylor, after picking up several passengers, he became so angry over having to drive the additional *1081 route he "couldn't even see the road." Fearing that he "probably would have hurt a bunch of people" if he continued on the route, Mr. Taylor pulled the bus over to the side of the road.
Shortly thereafter, Mr. Menson drove up and parked his vehicle behind the bus. Mr. Menson then went to the front of the bus where Mr. Taylor was sitting in the driver's seat and asked him why the bus was stopped. Mr. Taylor advised Mr. Menson that nothing was wrong with the bus, but he wanted to know why he had to make another trip. Mr. Menson did not give him a reason, but ordered that he complete the trip.
The parties' accounts differ as to whether Mr. Taylor was seated in the bus when Mr. Menson ordered him to make the trip, or whether he and Mr. Menson were standing just outside the doorway at that time. In any event, it is undisputed that Mr. Menson turned away from Mr. Taylor and began walking back to his vehicle parked behind the bus.
Mr. Menson and Mr. Taylor offered different accounts regarding what happened after Mr. Menson turned away from Mr. Taylor. Mr. Menson stated that Mr. Taylor grabbed his neck from behind and "flipped [him] like a baby." At the time of the incident, the 6-foot Mr. Taylor, who was in his thirties, weighed about 275 pounds, while the 55-year-old Mr. Menson weighed only about 185 pounds. Mr. Menson attested that after Mr. Taylor threw him to the ground, Mr. Taylor jumped on his leg and knee. He recounted that while Mr. Taylor was on top of him, Mr. Taylor slapped him in the face and threatened to kill him. As a result of the altercation, Mr. Menson suffered a broken ankle, as well as injuries to his knee and shoulder.
Mr. Taylor, however, stated that he grabbed Mr. Menson's arm from behind for the sole purpose of preventing Mr. Menson from walking away from him while he was trying to get Mr. Menson to explain why he had to drive the additional route. He believed that Mr. Menson must have become startled when he grabbed his arm, noting that Mr. Menson "jumped" a little. As a result, he explained, Mr. Menson slipped on the side of the road, thereby injuring himself. Mr. Taylor admitted ripping Mr. Menson's shirt when he grabbed his arm. He attested that while Mr. Menson lay on the ground, he stood over him, and cocked his fist back to hit Mr. Menson, but insisted that at no time did he lay on top of, threaten, or hit Mr. Menson.
Two students on the bus the day of the incident stated that Mr. Taylor grabbed Mr. Menson around the neck and caused him to fall to the ground. One of the students acknowledged she could not see what happened after Mr. Menson hit the ground. The other stated that she observed Mr. Taylor lying over Mr. Menson, and she observed Mr. Taylor strike Mr. Menson.
On December 27, 1996, Mr. Menson filed suit against Mr. Taylor, Mr. Taylor's wife and CTC. In a second supplemental and amended petition filed on February 27, 1997, Mr. Menson added Mr. Taylor's homeowner's insurance carrier, State Farm Fire & Casualty Company (State Farm), as a defendant in the suit. All defendants answered the original and supplemental petitions, generally denying the allegations contained therein.
On May 1, 1998, State Farm filed a motion for summary judgment. Following a hearing on the motion, a judgment rendered in favor of State Farm was signed on September 17, 1998 and was designated as final and immediately appealable. This appeal, taken by the Taylors, followed.

DISCUSSION
The sole issue to be addressed in this appeal is whether the trial court properly granted a motion for summary judgment in favor of State Farm. This court reviews summary judgments de novo under the same criteria that governs the trial court's consideration of whether a summary judgment is appropriate. Robertson v. Northshore Regional Medical Center, 97-2068, p. 5 (La.App. 1 Cir. 9/25/98), 723 *1082 So.2d 460, 463. A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966B. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Harrison v. Shipp, 98-0021, p. 5-6 (La.App. 1 Cir. 12/28/98), 724 So.2d 864, 867.
In moving for summary judgment, State Farm averred that it was entitled to judgment based on two grounds: (1) Mr. Menson's exclusive remedy is workers' compensation; or (2) certain exclusions contained in appellant's homeowner's policy preclude coverage. The following are the two policy exclusions referred to by State Farm in its motion:
1. Coverage L [Personal Liability] and Coverage M [Medical Payments] do not apply to:
a. bodily injury or property damage:
(1) which is either expected or intended by an insured; or
(2) to any person or property which is the result of willful and malicious acts of an insured;
b. bodily injury or property damage arising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured. This exclusion does not apply:
(1) to activities which are ordinarily incident to non-business pursuits;
* * * * * *
Although several grounds were raised by State Farm in its motion for summary judgment, it is clear that the trial court based its judgment on only one of the grounds raised. The trial court, in the present case, stated the following in its reasons for judgment:
Mr. Colvin, it appears to this court that your motion is well-founded. Now, do you have something you want to say? It appears that there would be no way that this court can construe those acts as sounding in negligence. The court is of the opinion that they are intentional acts; that it was just a fistic encounter, a fight.
Nevertheless, because this case comes before us on summary judgment, we address two additional grounds raised by State Farm in the motion for summary judgment, namely, the exclusivity of the workers' compensation remedy and the exclusion in the State Farm policy for bodily injury resulting from the "willful and malicious" acts of an insured.
Appellants insist that Mr. Taylor's deposition testimony establishes that he did not intend to injure Mr. Menson when he grabbed him. Mr. Menson, however, claims that Mr. Taylor battered him and threatened to kill him. Given these contrasting versions of how the incident occurred, appellants contend not only is Mr. Taylor's intent in dispute but also the manner in which the injury occurred. These factors, they urge, prevent the entry of summary judgment on the issue of insurance coverage.
State Farm acknowledges that there are two different versions of the events; however, it argues that for the purpose of the motion for summary judgment, the differences between Mr. Taylor and Mr. Menson's accounts are immaterial. State Farm posits that regardless of which version is accepted, there is no genuine issue of material fact regarding insurance coverage. State Farm maintains that the evidence on the motion for summary judgment establishes either: (1) plaintiff's only remedy is workers' compensation, thus precluding a tort action against Mr. Taylor or his homeowner's insurer; or (2) if plaintiff has a right to pursue a tort claim against Mr. Taylor, State Farm's policy excludes coverage for the injuries claimed by plaintiffs.
We agree with State Farm's argument. A case may be appropriate for *1083 summary judgment even when there are differing versions of the events, if the differences are not material. Bouton v. Allstate Insurance Company, 491 So.2d 56, 58 (La.App. 1st Cir.1986). Regardless of which version of the events is accepted, State Farm is entitled to judgment as a matter of law.
First, if Mr. Taylor's account is accepted, the workers' compensation exclusivity provision, La. R.S. 23:1032, would preclude a tort action against him. La. R.S. 23:1032 provides that workers' compensation is the employees' exclusive remedy against a fellow worker. There are two exceptions to this rule. The first is for injuries occasioned by the intentional act of the fellow employee. The second exception involves injuries that occur outside the course and scope of the employment. Thus, although La. R.S. 23:1032 provides for tort immunity to a co-employee of an injured employee, an employee may seek tort recovery from a co-employee who willfully caused the employee's injuries, or who was not engaged in the normal course and scope of his employment at the time of the injury. Smith v. Berteau, 98-1438, p. 4 (La.App. 1 Cir. 6/25/99), 739 So.2d 269, 272; Watkins v. International Service Systems, 32,022, p. 3 (La.App. 2 Cir. 6/16/99), 741 So.2d 171, 173-74, writ denied, 99-2129 (La.10/29/99), 749 So.2d 640.
The course of employment test refers to time and place, while the scope of employment test examines the employment related risk of injury. Id. It is undeniable that the injuries in this case arose during the course and scope of Mr. Menson and Mr. Taylor's employment with CTC. The "grabbing" incident described by Mr. Taylor occurred while both workers were engaged in their employment and the confrontation leading to the injury was clearly employment-rooted. The incident, as told by Mr. Taylor, occurred because of Mr. Taylor's efforts to question Mr. Menson about a work order Mr. Taylor was angry about.
Given that the injury occurred during the course and scope of the employment, workers' compensation would provide Mr. Menson's exclusive remedy against Mr. Taylor unless the injury resulted from an "intentional act." In the context of the workers' compensation act, the meaning of the word "intent" means that the co-employee must either (1) consciously desire the physical result of his act, whatever the likelihood of the result happening from his conduct, or (2) know that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Abney v. Exxon Corporation, 98-0911 (La.App. 1 Cir. 9/24/99), 755 So.2d 283, writ denied, XXXX-XXXX (La.1/14/00), 753 So.2d 216.
Mr. Taylor insists he never intended to injure Mr. Menson, but only grabbed his arm in an effort to continue their conversation. Under his version, the incident was simply a work-related accident. If this is how Mr. Menson's injuries resulted, the intentional act exception to the exclusivity provision would not be applicable, and workers' compensation would be Mr. Menson's exclusive remedy against Mr. Taylor. As its insured would be immune from suit in tort, so too would State Farm.
On the other hand, if Mr. Menson's version of the incident is accepted, the State Farm policy unambiguously excludes coverage for Mr. Menson's injuries under the exclusion for bodily injury which is the result of "willful and malicious acts of the insured." Mr. Menson described a violent assault during which Mr. Taylor grabbed him from behind, threw him to the ground, jumped on his leg and broke his ankle, struck him while he was on the ground and threatened to kill him.
In Keathley v. State Farm Fire & Casualty Insurance Co., 594 So.2d 963, 965-966 (La.App. 3rd Cir.1992), the court construed an exclusionary clause in a liability insurance policy that disallowed coverage for bodily injury resulting from the "willful and malicious acts of the insured." In Keathley, the plaintiff and defendant were playing a basketball game when defendant, *1084 believing he had been tripped by the plaintiff, approached the plaintiff from behind and struck him in the face without warning, breaking plaintiff's teeth and causing gum damage. Although acknowledging that not many cases interpreted the "willful and malicious" exclusionary clause, the court noted that the term "willful" "has been held to apply to conduct that is still negligent, rather than intentional, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended. Keathley, 594 So.2d at 965. The court also noted that the term "malicious" is "[c]haracterized by, or involving, malice; having, or done with, wicked, evil or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse or as a result of ill will." Black's Law Dictionary 958 (6th ed.1990); Id.
Under the exclusion for willful and malicious acts, it is immaterial whether the defendant intended the actual resulting injuries. Rather, this exclusion applies to conduct showing the defendant acted with a conscious indifference to the consequences with knowledge that harm would follow. The "malicious" prong of the exclusion applies to conduct that is intentional, wrongful, and without just cause or excuse. Keathley, 594 So.2d at 966.
If Mr. Menson's version of the attack is accepted, his injuries resulted from the willful and malicious acts committed by Mr. Taylor. There can be no doubt that the actions of one who violently attacks another person from behind, throwing that person to the ground, jumping on him and breaking his ankle, striking him and threatening to kill him are both willful and malicious. See LaFever v. Whitely, 613 So.2d 1007, 1009 (La.App. 1 Cir.), writ denied, 614 So.2d 64 (La.1992) (upholding the grant of summary judgment on the issue of insurance coverage, finding an exclusion for willful and malicious acts of the insured precluded coverage for injuries inflicted by an insured during the course of a fight); Keathley, 594 So.2d at 966 (holding that someone who strikes another person from behind must have intended for harm to follow, and such conduct demonstrates an indifference to the consequences that may flow from his actions as well as acting wrongfully and without just cause).
Based on the foregoing, although the versions of the incident sued upon are conflicting, if either is accepted, State Farm is not liable to the plaintiffs as a matter of law. Therefore, the trial judge correctly granted State Farm's motion for summary judgment.

CONCLUSION
The judgment appealed from is affirmed. All costs of this appeal are assessed to appellants, Wendal and Rosie Taylor.
AFFIRMED.
GUIDRY, J., concurs in the result reached by the majority.