952 So.2d 833 (2007)
Gail TERREBONNE
v.
Joanne L. CHERAMIE and Dustin M. Cheramie.
No. 06-CA-843.
Court of Appeal of Louisiana, Fifth Circuit.
February 27, 2007.
Rehearing Denied March 21, 2007.
Timothy G. Schafer, Shannon R. Bourgeois, Schafer & Schafer, New Orleans, Louisiana, for Plaintiff/Appellant.
*834 Leonard M. D'Angelo, Frederick A. Miller & Associates, Metairie, Louisiana, for Defendant/Appellee, State Farm Fire & Casualty Company.
Christoper H. Riviere, Eric L. Trosclair, Thibodaux, Louisiana, for Defendants/Appellants, Joanne L. Cheramie and Dustin Cheramie.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and CLARENCE E. McMANUS.
THOMAS F. DALEY, Judge.
Plaintiff, Gail Terrebonne, appeals the trial court's grant of summary judgment in favor of defendant, State Farm Fire and Casualty Company, on the grounds that State Farm's homeowners' policy issued to Joanne Cheramie, another defendant, provides no coverage for the acts of Mrs. Cheramie and her son, Dustin, which resulted in personal injury to plaintiff, Terrebonne. Terrebonne and Cheramie engaged in a physical fight that resulted in personal injury to Terrebonne. State Farm successfully argued that coverage was excluded under one and/or two exceptions for coverage, the first for intentional acts and the second for personal injury that is the result of the willful and malicious acts of the insured.
On appeal, Terrebonne argues that issues of material fact exist that preclude summary judgment. Specifically, she argues that since Mrs. Cheramie testified, both in deposition and at her criminal trial for second degree battery, that she did not intend to injure Terrebonne to the degree she was injured, the exclusion does not apply since the injuries were unexpected, unintended, unforeseen, and unanticipated. It is also argued that Dustin's actions do not fit the exclusions for coverage in the policy.
The incident occurred on April 12, 2000. Evidence in the record reveals that Mrs. Cheramie and her son, Dustin, also a defendant, traveled from their home in Galliano in Lafourche Parish and arrived uninvited at Terrebonne's home in Grand Isle, apparently looking for Anthony Cheramie, Joanne's husband and Dustin's father.[1] The record shows that Joanne thought that Terrebonne was having an affair with her husband. According to various testimonies in the exhibits, Dustin went up Terrebonne's steps, stating that he was looking for his daddy and was going to kill him. Joanne, who stayed with the car, also allegedly yelled to Terrebonne, who had opened her front door, that she was a whore and she would kill her. (Earlier in the evening, according to Terrebonne, the Cheramies also called Terrebonne's home and made similar threats.) Terrebonne closed her door and called the police. The Cheramies left before the police arrived, who then took a description of the Cheramies' vehicle. Terrebonne testified that the encounter left her shook up and scared.
Terrebonne testified in deposition that she feared Dustin would find his father and indeed try to kill him, so she left her house in her parents' truck, and in possession of a handgun, in an attempt to find Anthony and warn him of his wife's and son's presence on the island. She drove to Rosethorn Lane, where she thought Anthony might be spending the night at a camp. On Rosethorn Lane the parties encountered each other again. Although testimony varies as to the exact details, it is agreed that Dustin entered Terrebonne's pickup truck, put it into neutral, and took the keys out of the ignition so that Terrebonne could not drive it, and took Terrebonne's handgun.
*835 The two women left their vehicles and started fighting, though according to their testimonies in deposition and at Cheramie's criminal trial, no one threw a "first punch." Initially Terrebonne was on top of Cheramie, with Cheramie biting Terrebonne's finger. According to her own testimony at the criminal trial, eventually Cheramie was able to get on top of Terrebonne and picked up the back of Terrebonne's head and hit Terrebonne's face into the ground at least twice before Dustin pulled her off. At some point Terrebonne was knocked out and lost consciousness. She claimed in her testimony and statement that it could not have been Joanne, as she knew where Joanne was at that point, and she was blindsided from a different direction. Terrebonne didn't know if the blow was delivered by Dustin, though she did note that he watched the whole fight from no more than four feet way. The Cheramies and Guilbeau left the scene, and according to their testimony, intended to drive back to Lafourche Parish to give the gun to police there. Joanne testified that as they were leaving, Terrebonne was conscious, as they saw her standing up.
Neighbors on Rosethorn Lane saw the beating and called police, who responded and found Terrebonne lying injured in the street.[2] They transported her to the hospital, where her various injuries were treated. These injuries included facial cuts and scrapes, a broken nose, loosed and broken teeth, and other broken facial bones. The Cheramies were stopped at the Leeville bridge and held by Harbor Police for the Grand Isle police. Joanne and Dustin were charged with second degree battery of Gail Terrebonne, and were later tried and convicted of those offenses in the 24th JDC.
Terrebonne filed a civil suit against the Cheramies on May 20, 2000. State Farm was added as a defendant by way of the Second Supplemental and Amending Petition filed April 3, 2002.[3] State Farm filed its Motion for Summary Judgment on June 26, 2006. A hearing was held on July 20, 2006. Judgment was rendered in favor of State Farm on August 4, 2006, finding no coverage because of the application of the intentional act policy exclusions. State Farm was dismissed from the case. Both Terrebonne and the Cheramies have appealed this judgment.
Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The party bringing the motion bears the burden of proof; however, where the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim. LSA-C.C.P. art. 966(C)(2). Thereafter, if the adverse party fails to produce factual support sufficient to show that he will be able to meet his evidentiary burden of proof at trial, no issue of material fact exists and the moving party is entitled to summary judgment. Id. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Pizani v. Progressive Ins. Co., 98-225 (La.App. 5 Cir. 9/16/98), 719 *836 So.2d 1086. The decision as to the propriety of a grant of a Motion for Summary Judgment must be made with reference to the substantive law applicable to the case. Sun Belt Constructors, a Div. of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350 (La.App. 5 Cir. 1988).
The insurer bears the burden of proving the applicability of policy exclusions. Tunstall v. Stierwald, 01-1765, p. 6-7 (La.2/26/02), 809 So.2d 916, 921.
State Farm argued in its Motion for Summary Judgment that no issues of material fact remained. It argued that two "intentional act" exclusions within the Cheramies' policy applied to preclude coverage for Dustin and Joanne's intentional acts. The State Farm's pertinent policy language reads as follows:
"Coverage L and Coverage M do not apply to:
a. bodily injury or property damage:
(1) which is either expected or intended by an insured; or
(2) to any person or property which is the result of willful and malicious acts of an insured."
Thus, there are two exclusions, the application of either one which would exclude coverage.
Application of the second exclusion clearly serves to exclude coverage despite the Cheramies argument that the incident was "spontaneous," i.e. unplanned and therefore, not a willful and intentional act. The evidence shows that Cheramie and her son traveled from their home to Terrebonne's home, and once there, threatened both Anthony and Terrebonne with physical harm. The fact that the encounter took place later that day and in a different location does not change the fact that the Cheramies are the ones who initiated the contact and threatened the victim with physical harm.
In Keathley v. State Farm Fire and Cas. Ins. Co., 594 So.2d 963 (La.App. 3 Cir.1992), the court said:
The second part of the clause in the bodily injury exclusion disallows coverage for bodily injury . . . to any person . . . which is the result of willful and malicious acts of an insured . . . . .
. . . The term willful has been defined, and this term has been held to apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended.
"The usual meaning assigned to this term is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It is usually accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." See Prosser, Law of Torts, Section 34, at pages 187-189 (3d Ed.1964). Cates v. Beauregard Electric Cooperative, Inc., 316 So.2d 907 (La.App. 3d Cir.1975); Prosser v. Crawford, 383 So.2d 1363 (La.App. 3d Cir.1980).
The term malicious, also used in the second part of the exclusionary clause, has not been defined or used in any cases like the term "willful". In order to determine if defendant's conduct falls under this second prong, we must use the common meaning of the word "malicious". The general meaning of this term as found in Black's Law Dictionary 5th ed. is as follows:
"Characterized by, or involving, malice; having, or done with, wicked or *837 mischievous intentions or motives; wrongful and done intentionally without just cause or excuse. See also Malice; Willful."
The Keathley court held that under the second part of the exclusionary clause, it was immaterial whether the defendant intended the actual resulting injuries.
This Court has no difficulty in determining that Joanne's act of smashing Terrebonne's face into the ground, and engaging in the physical fight in general, fits the policy definition of willful and malicious acts, and in finding that Terrebonne's injuries were caused, in whole or in part, by those actions. So, too, would Dustin's act of striking Terrebonne and knocking her out clearly fall under this exclusionary clause. See also Menson v. Taylor, 99-0300 (La.App. 1 Cir. 4/17/00), 764 So.2d 1079 (A case may be appropriate for summary judgment even when there are differing versions of the events, if the differences are not material.)
The trial court's grant of summary judgment in favor of defendant, State Farm, is affirmed.
AFFIRMED.
NOTES
[1] The Cheramies were accompanied by another individual, Maloy Guilbeau.
[2] A statement given by witness, Ryan Gautreaux, explains that he saw a man and a woman beating another woman who was on the ground.
[3] Guilbeau was also added as a defendant in the First Supplemental and Amending Petition, but is not concerned with the present appeal.