ROBERT M. MURPHY, Judge.
| gThis is a wrongful death and survival action brought by the son of Barbara Viola Fouchi against State Farm Fire and Casualty Company (“State Farm”), the homeowner’s insurer of her husband, Dr. Dana Ray Fouchi, who shot and killed her before committing suicide. Her son, Dylan Carey Gutierrez (“Gutierrez”), appeals the trial court judgment granting State Farm’s motion for summary judgment based on the policy’s coverage exclusions of an insured’s intentional and willful/malicious acts. For the reasons that follow, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
It is undisputed that on February 20, 2009, Dr. Fouchi, a family medical practitioner, shot and killed his wife óf 13 months, Barbaba Viola Fouchi, before turning the gun and killing himself at his home at 2504 Danny Park in Metairie, Louisiana. , . ..
■| «State Farm Fire and Casualty Company (“State Farm”) had issued a homeowner’s policy to Dr. Fouchi which provided coverage for his Danny Park residence at the time of the incidént. Coverage L of the policy provided, coverage for bodily injury damages caused ■ by Dr. Fouchi. The policy contained exclusions, however, for “bodily injury -.. .• (1) which.is either expected or intended by the insured; or (2) which is' the .result of willful or malicious acts of the insured.”- The -policy further excluded coverage for an insured as defined in the policy:
4. ‘Insured’ means you, and if résidénts of your household:
a. ’ Your relatives; arid
b. Any other person under the age of 21 who is in the care of a person described above.
On February 17, 2010, Gutierrez, the son of Barbara Viola Fouchi fi*om a previous marriage, filed a petition for damages for wrongful death and survival-damages against . State Farm to recover against the policy for his mother’s damages plus the damages he sustained as a result of his mother’s death. State Farm answered, admitting it issued the policy but denying coverage. . On November, 14, 2013,.State Farm filed a motion for summary judgment, contending that its policy does not provide coverage based on the exclusions above.
At the October 29, ,2012 hearing, the trial court granted the motion based on the policy’s - exclusion of intentional and willful/malieious acts and dismissed-all claims against State Farm with prejudice. The trial court required evidence of insanity to negate the intentiorial exclusion:
I think if there would have been some prior determination that the [Dr. Fou- *974 chi] was insané, that would be a different situation, but here we don’t have that. We just have Dr. Salcedo reading some report.
In written reasons assigned on November 16, 2012, the trial court addressed the issue of Dr. Pouchi’s intentional acts.and that shootings are generally intentional acts excluded under the policy:
| ¿Dana Ray Fouchi intentionally ■ shot and killed the plaintiffs mother, Barbara Viola Fouchi. Intentional acts are specifically excluded under the clear language of the policy. Exclusions for damages for willful and malicious acts or intentional acts have ■ consistently been upheld by the courts. ‘An insured party who shoots someone, generally, is not entitled to insurance protection because a shooting is ordinarily considered an intentional act intended or expected to ' cause bodily injury ... insureds who pull loaded guns and shoot other persons have not found the courts receptive to their exclusionary explanations, even in defense of the insurer’s motion for summary judgment.’ Jones v. Estate of Santiago, 03-1424 (La.4/14/04), 870 So.2d 1002, 1010. (Emphasis added).
The trial court signed the judgment on January 14, 2013. ‘ :
Plaintiff filed' a motion for devolutive appeal on February 7, 2013 which was granted on February 26, 2013. On October 30, 2013, ‘ this' Court vacated the trial court judgment and remanded the matter without reaching the merits of the appeal. Gutierrez v. State Farm Fire & Cas. Ins. Co., 13-341 (La.App. 5 Cir.10/30/13), 128 So.3d 509. We found that the trial court erroneously considered evidence not properly before the court.[1]
On November 14, ■ 2013, State Farm re-urged its motion in the trial court based on the exclusions in its policy, now in evidence.
Plaintiff argued that the intention and willful/malicious exclusions above would not apply because Dr. Fouchi had a mental illness that rendered him incapable of understanding or intending the consequences of his actions or of acting in a willful or malicious manner. Plaintiff relied on his expert, forensic psychologist Dr. Rafael F. Salcedo, who reviewed various records listed in his expert report and Dr. Fouchi’s history and behavior. Dr. Salcedo opined that Dr. Fouchi was suffering from depression and a manic episode, had impaired judgment, and lacked the ability to a significant degree to appreciate the impact and consequences of his actions at the time he killed both his wife and himself. | BPr. Salcedo interviewed third parties with knowledge of Dr. Fouchi’s behavior, reviewed Dr. Fouchi’s medical records listed in his report, and documented his history of major depression, behavior, and sexual disorders. Those records, dating from 1989 to 2008, included the following:
i) March, 1995: 19 days at Sierra Tucson Addiction Treatment Center, where he was diagnosed with sexual disorder, recurrent major depression, and obsessive compulsive personality disorder;
ii) 10 — 15 years on anti-depressant Ef-fexor;
iii) 2007: State Board of Medical Examiners opened investigation to determine his continued fitness to practice medicine, and ordered a comprehensive evaluation which found recurrent sexual misconduct, sexual addiction disorder, and history of severe major depression. The *975 Board’s report entitled “Comprehensive Evaluation” set forth Dr. Fouchi’s mental health history and behavior;
iv) October and November, 2007: 45 days of treatment at Pine Grove Gentle Path Program;
v) Five years of marital counseling with his first wife Yvette Fouchi;
vi) Five years of psychoanalysis with Kern Gregson;
vii) Dr. Fouchi married Barbara Viola two months after leaving Pine Grove.
viii) Five years of Sexual Addicts Anonymous meetings beginning in 1995;
ix) Ten years of individual therapy with Anne Teachworth at the Gestalt Institute. Teachworth diagnoses Dr. Fou-chi’s Post-Traumatic Stress Disorder where under stress, he becomes more manic and acts out. She notes stressors caused by Hurricane Katrina and loss of his medical license and income;
x) Suspension of medical practice pending investigation;
xi) Medical license in jeopardy twice in 1995 and 2007, conditioned on his completing treatment;
xii) In March, 2008, he refused to sign a Consent Order requiring that he complete treatment to regain his license; he responded to the Board by email, “I am selling all my property -in Mississippi and Louisiana moving to North Carolina in July to live in the mountains -until my death- Consequences of my' actions are mine to bear.” He e-mailed ‘ his therapist Teachworth that he might work there in a male prison and- drive trucks.
[Rxiii) In the summer of 2008, Teach-worth noted that Ms. Fouchi thinks Dr. Fouchi acts “like a child.” Son testified a year later that his mother indicated that she was leaving him.
Plaintiff’s expert, Dr. Salcedo opined in his report:
I- am reasonably persuaded, again, that at ‘the time of the commission of the murder-suicide, Dr. Fouchi was by definition, suffering from a majoh depressive disorder, with a possibly delusional level of hopelessness and severe psychological distress, leading to behavior which was not only self-destructive, but totally out of context (notwithstanding elements of personality pathology). There are a sufficient number of references to the possibility of a mood disorder in the records I reviewed, which make reference to both “manic episodes,” as well as a history of depression, possibly severe. I believe that these factors in all likelihood significantly impaired Dr. Fouchi’s judgment and ability to appreciate the impact and consequences of his actions at the time of the murder/suicide. (Emphasis added).
.The Comprehensive Evaluation report, ordered by the State Board of Medical Examiners, further noted Dr. Fouchi’s (‘traumatic childhood”: , his parents divorced at age five; his older brother beat him; his father called the children.“pigs”; he moved in with a great-aunt at age 12-13; this aunt’s husband and son died the same Christmas day, after which he moved in with an older woman; he sexually pursued an older woman who had sex with him when he was 14; he dated her until he was 17 when she began dating his father; and he had problems with sexual harassment of co-workers and patients starting in 1989. „
Plaintiff argued that his expert’s opinion created a genuine issue of material fact as to whether Dr. Fouchi intended his acts, viz., whether he was. able to. form the requisite intent to appreciate the impact and consequences of his actions. Contrariwise, State Farm argued that- Dr. Salcedo merely diagnosed mania, and depression and did' not formally declare Dr. Fouchi to *976 be insane, as indicated by the trial court. State Farm complained that Dr. Salcedo was not able to evaluate Dr. Fouchi prior to his suicide.
|7State Farm’s motion also addressed the residence exclusion. Plaintiff argued that Barbara, was not a resident of the insured’s property and relied on the dictionary. definition of “resident,” a term not defined in the policy, to require that one must intend to live at the address at issue to be considered a resident. The son testified in his deposition that his mother and Dr. Fouchi had an unusual marriage arrangement where she had maintained her own residence and never intended to remain at her husband’s residence:
Q. But you’re telling me the two of them never lived together?
A. No. .The relationship was — sometimes he would come over and stay a few nights and sometimes she would, you know, she would stay a few nights by him, and it was just off and on. ■
Q. So sometimes he would go to the 42nd Street address and stay a little while?
A. Correct.
Q. Arid sometimes she wbuld go wher-evér he was living?
A. Yes; But that was rare. Most of the time he would come over for a couple of days.
According to his testimony, his mother rarely stayed at the Danriy Park address, and on the day of the murder-suicide, she had been there only ten days. In evidence are utility and credit card bills she received at her address on'Johnson Street.
The trial court took up plaintiffs re-urged motion for summary judgment on January 14, 2014 with the exhibits in evidence. The judgment, signed on February 11, 2014, granted State Farm’s motion. The transcript indicates that the trial judge “grarit[ed] the summary judgment on the same reasons [he] granted it .the first time.” ■ On November 16, 2012, the trial court had limited its ruling to the intentional act exclusion and did not reach the issue of the resident exclusion. On February 13,2014, plaintiff filed his second timely motion for devolutive appeal.
^ASSIGNMENTS OF ERROR
1. The trial court erred by improperly ; weighing and evaluating the credibility of Dr. Salcedo’s expert opinion and disregarding his opinion regarding Dr. Fouchi’s ability to under- ■ stand and intend his actions’ and their consequences.
2. The trial court erred by failing to recognize that genuine issues of material fact relating to Dr. Fouchi’s state of mind and ability to understand his actions and their consequences. - ■ '
STANDARD OF REVIEW
Appellate courts review á judgment granting summary judgment on a de novo basis. See Schroeder v. Board of Sup’rs of La. State Univ., 591 So.2d 342, 345 (La.1991). The appellate court uses the same criteria as the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Id.
LAW AND DISCUSSION
Appellant argues.in his first assignment of error that the trial court erred by improperly weighing and evaluating the credibility of Dr. Salcedo’s expert opinion and disregarding his opinion regarding Dr. Fouchi’s ability to understand and intend his actions and their consequences.
It is improper for the ‘trial court automatically to disregard an expert opinion. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/9/00), *977 755 So.2d 226, 235-36, ■ At the summary judgment stage, the trial court must assume that all affiants are credible:.
[T]he trial judge cannot make credibility determinations on a motion for summary judgment. See Sportsman Store of Lake Charles, Inc. v. Sonitrol Systems of Calcasieu, Inc., 99-0201, p. 6 (La.10/19/99), 748 So.2d 417 (“[t]he rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony”) Frank L. Maraist & Harry T. Lemmon, 1 La. Civil Law Treatise, Civil Proc. ’§ 6.8, p. Í45 (1999); (“[i]n deciding a motion for summary judgment, the court must assume that all of the affiants'are credible ...”). Second, the court must not attempt to evaluate the | ^persuasiveness of competing scientific studies. In performing its gatekeeping analysis at the summary judgment stage, the court must “focus solely on the principles and methodology,'not on the conclusions they generate.” Daubert [v. Merrell Dow Pharmaceuticals, Inc.], 509 U.S. 579, 595, n. 6, 113 S.Ct. 2786 [125 L.Ed.2d 469 (1993)]. Third, the court “.must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion.” Maraist & Lemmon, supra, p. 145. Fourth, and most importantly, summary judgments deprive the litigants of the opportunity to present their evidence to a jury and should be granted only when the evidence presented at the motion for summary judgment establishes that there is no genuine issue of material fact in dispute. If a party submits expert opinion evidence in opposition to a motion for summary judgment that would be admissible under Daubert-Foret and the other applicable evidentiary rules,~ and is sufficient to allow a reasonable juror to conclude that the expert’s opiniopi.on a material fact more likely than not is true, the trial judge should deny the motion and let the .issue be decided at trial. Id. at 144. (Emphasis added).
Courts cannot make credibility determinations, evaluate testimony, or weigh evidence, in determining whether there is a genuine issue of material fact. See Berry v. Volunteers of America, 10-832, 10-833 (La.App. 5 Cir. 4/26/11), 64 So.3d 347, 350.
Here, the trial judge relied on a broad generalization in the Santiago case in its reasons for judgment: “an insured party who shoots someone, generally is not entitled to insurance protection.” Santiago, supra, 870 So.2d at 1010. (Emphasis added). In the instant matter, the trial court criticized the plaintiffs expert, Dr. Salce-do, ás merely reading from a report' and riot having "made a determination of Dr. Fouchi’s intent prior to his suicide. Despite appellee’s assertions, we find'no such requirements, that the expert psychologist meet "with the insured, or that an intent determination can only be made on personal evaluations prior to death. Neither party argued that there are such requirements under Daubert-Foret to evaluate Dr. Fouchi’s capability to form intent. See von Dameck v. St.. Paul Fire & Marine Ins. Co., 361 So.2d 283 (La.App. 1 Cir. 1978), writs denied, 362 So.2d 794, 362 So.2d 802 (La.1978). .(Court upheld post-suicidal finding of insanity, even where assailant in murder-suicide lacked a medical history). '. ,
ImOn de novo review of the trial court’s ruling on summary judgment on the intentional act exclusion, we find that the trial court erréd in summarily disregarding Dr. Salcedo’s unhebutted testimony, finding it was not credible, due to lack of finding of Dr. Fouchi’s insanity and lack of his. contemporaneous evaluation of Dr. Fouchi.
This first assignment of error therefore has merit.
*978 Appellant argues in his second assignment of error that the trial court erred by failing to recognize that genuine issues of material fact existed relating to Dr. Fouchi’s state of mind and ability to understand his actions and their consequences. Appellee contends the intentional act exclusion does not apply here, as appellant’s expert did not find Dr. Fouchi to be insane..
Despite not using the word “insanity,” appellant’s expert, Dr. Salcedo, did address the issue of Dr. Fouchi’s intent and opined:
I believe that these factors in all likelihood significantly impaired Dr. Fouchi’s judgment and ability to appreciate the impact and consequences of his actions at the time of the murder/suicide. (Emphasis added).
Dr. Salcedo’s report raises the issue of Dr. Fouchi’s intent as a genuine issue of fact. Black’s Law Dictionary defines “insanity” in law as “such a want of reason, memory and intelligence as prevents a man from comprehending the nature and consequences of his acts or from distinguishing right and wrong conduct.” Black’s Law Dictionary 929 (4th ed. rev.1968) (Emphasis added). One similar to Dr. Salcedo’s definition was applied by the von Dameck Court to find Dr. Cayer insane such as to preclude the applicability of the intentional act exclusion:
We further find that the stresses to which he was subjected in the months just prior to his death, caused him, while at home with his wife, to lose the ability to reason and/or understand the nature and consequences of his action to such a degree that under the law he was legally insane at the time. 361 So.2d at 288. (Emphasis added).
|nIn von Dameck, Dr. Cayer committed a murder-suicide when he shot his wife three times in the chest and then shot himself. Her family sued Dr. Cayer’s liability insurer, which argued that there was no coverage under the intentional acts exclusion in its policy. The von Dameck Court heard from experts and family members regarding Dr. Cayer’s conduct, his loss of income and medical practice, and a medical malpractice suit against him. The trial court found there was sufficient information available post-suicide from a medical standpoint regarding “the severity of Dr. Cayer’s condition at the time of the shooting,” and found from a legal standpoint he was insane at the time. The trial court further found “stressors to which he was subjected caused him, while at home with his wife, to lose the ability to reason and/or understand the nature and consequences of his action to such a degree that under the law he was legally insane at this time.”
In Preston v. Granger, 517 So.2d 1125 (La.App. 5 Cir.1987), writs denied, 519 So.2d 142 (La.1988), this Court applied the above standard, the same used by Dr. Salcedo in his report to evaluate the seriousness of intent. The Preston Court upheld the jury’s finding that the tort-feasor was sane and that he intended to inflict injuries, so as to preclude recovery against the tort-feasor under the homeowner’s policies: [2]
The accepted definition of a person of insane mind as applied to tort liability is that of a person who has such a “want of *979 reason, memory and intelligence” that it “prevents [him] from comprehending the nature and consequences of his acts or from distinguishing between right and wrong conduct.” Id. at 1129 (quoting von Dameck, supra, 361 So.2d at 286, 288).
The person who cannot understand the consequences of his acts, cannot at the same time inflict intentional injury. We therefore find Dr. Salcedo’s expert 112testimony, by- a preponderance of the evidence, has created a genuine issue of material fact as to Dr, Fouchi’s intent.
This analysis further applies to the policy exclusion of willful and malicious acts. Appellee contended this is a separate exclusion requiring summary judgment dismissal of appellant’s claims. The exclusion of willful and malicious acts is a separate policy provision. Menson v. Taylor, 99-0300 (La.App. 1 Cir. 4/17/00), 764 So.2d 1079. The exclusion can apply even though the insured may not have intended the resulting damages. Keathley v. State Farm Fire & Cas. Co., 594 So.2d 963 (La.App. 3 Cir.1992). We similarly find summary judgment based on the willful/malicious act exclusion to be precluded based on genuine issues of material fact. Dr. Salcedo’s report creates an issue of whether Dr. Fouchi was capable of formulating any level of intent and not just being capable of intending particular damages defined as the ability “to appreciate the impact and consequences of his actions at the time.” ■ '
Assignment of error number two further has merit.
In its motion for summary judgment, appellee offered the alternative argument that coverage was excluded under the resident exclusion in the policy, an exclusion that was not reached by the trial court in its ruling and reasons. For the reasons above, we reverse the summary judgment granted to State Farm declaring that the insurance policy in question did not provide coverage based on. the exclusion of intentional acts.. Because we have reversed the summary judgment and remanded the matter for further proceedings, we do not reach the issue of the resident exclusion which was not addressed by the trial court.
DECREE
For the foregoing reasons, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

JREVERSED AND REMANDED

. The 2012 amendments to La. C.C.P. art. 966(B), applicable to this matter, deleted the words "on file” thus making the attachments to the motion for summary judgment inadmissible and requiring remand for the documents to be properly introduced and admitted into evidence in the trial court record.

. In the instant matter, State Farm argues that "insanity” cannot be a material issue of fact to preclude summary judgment because it was not mentioned in plaintiff's expert report. The central issue, however, is the ability to form intent, as insanity is a defense personal to the insane person and cannot be asserted by the insurer. Preston, supra, 517 So.2d at 1130 n. 3 (homeowner’s insurer); von Dameck, supra, 361 So.2d at 289 (personal liability insurer).